## HODGES v. STATE.

### Opinion delivered January 12, 1914.

1. HOMICIDE—SUFFICIENCY OF EVIDENCE.—Evidence held legally sufficient to support a verdict of murder in the first degree. (Page 27.)

2. ERROR CORAM NOBIS—REVIEW OF ACTION OF TRIAL COURT—CERTIORARI.—*Certiorari* is the appropriate remedy to review the action of a trial court in refusing a petition for a writ of error *coram nobis*. (Page 27.)

3. HOMICIDE—INSANITY—ISSUE AFTER VERDICT.—Where appellant was convicted of first degree murder upon a plea of not guilty, where a showing is made thereafter that appellant was insane at the time of the trial, the court's action in dismissing a petition for a writ of error *coram nobis*, will be reversed, and the cause remanded with directions to impanel a jury to inquire into appellant's insanity at the time of the trial. (Page 28.)

Appeal from Clark Circuit Court; *Jacob M. Carter,* Judge; affirmed on the merits; reversed on the petition for writ of error *coram nobis*.

### STATEMENT BY THE COURT.

Appellant was tried and convicted upon an indictment charging him with the crime of murder in the first degree. He filed a motion for a new trial in which, among other grounds, it was alleged that appellant was insane at the time of his trial and that that fact was unknown to his counsel until after the trial. The motion for a new trial was overruled and this appeal was taken from the judgment of the court pronounced upon the

jury's verdict.  Thereupon appellant by his next friend filed in the court below a petition for a writ of error *coram nobis,* with numerous exhibits thereto, in which it was alleged that appellant was insane at the time of his trial, and that this fact was not known to his attorneys until after the conclusion of the trial.  The prayer of this petition was denied and a writ of *certiorari* was sued out, and upon its return we have that record before us.

These proceedings have been consolidated and briefed together and the questions there raised will be disposed of in this opinion.

It is contended in the main case that the evidence is insufficient to support the verdict and that the proof fails to show any premeditation.  No objection is urged to the instructions.

It appears that appellant was arrested by Morgan Garner, a constable of Clark County, assisted by one J. E. Chancellor, upon a charge of having stolen a pistol and some trinkets of small value.  At the time of the arrest appellant inquired of Garner whether he had a warrant commanding his arrest, and, upon receiving a negative reply, appellant declined to submit to arrest, whereupon Garner thrust a pistol in his face and directed him to throw up his hands and to submit to a search of his person.  It appears that appellant was armed with a pistol at the time he was searched, but the officer failed to find the weapon and appellant retained it in his possession, and shortly thereafter shot Garner with it twice, killing him, and these proceedings grow out of that homicide.

Appellant testified at the trial that when he was arrested, Garner insulted, abused and beat him, to all of which he submitted, although he became angry, and quarreled with Garner, but did not attempt to resent the insult or to resist the assault upon him, further than to warn Garner against a repetition of his conduct.  He testified that after submitting to the arrest and while in Garner's custody, *en route* to the town where he was being carried, that angry words passed between them and that Garner undertook to shoot at him, whereupon he

drew his own pistol and fired it in the air to frighten Garner and then shot over him for the same purpose and without any intention of killing him. Chancellor testified that after the arrest he and appellant and deceased were in a buggy, when they came to a rough place in the road, and he asked deceased and appellant to get out of the buggy and walk across a little ravine, while he led the mule by the road; that he heard appellant tell deceased to throw up his hands and saw appellant fire two shots, when deceased drew his own revolver, which was in bad order but which deceased succeeded in firing one time. The general purport of Chancellor's evidence was that appellant killed deceased in making his escape, and he did make his escape, and was not rearrested for several days thereafter. These were the issues at the trial, and the evidence of Chancellor, which was evidently accepted by the jury as the truth, is sufficient to sustain the verdict of the jury.

In response to questions as to his residence and occupation, appellant testified he had spent two months in an insane asylum in Oklahoma, and on his cross examination the following questions were asked and answers given:

Q. Were you insane when you killed Mr. Garner?

A. I had my mind.

Q. You knew perfectly well what you were doing?

A. Yes, sir; but I did not know at that time I killed him. I didn't try to kill him; I wasn't trying to kill him and didn't shoot at him to kill him.

No proof was offered in support of the defense of insanity and no instruction submitted that question to the jury and it was not an issue in the case. The motion for a new trial set up newly discovered evidence, which could not have been known or have been produced at the trial, to the effect that appellant was insane, but no attempt was made to establish that fact further than to recite it as a fact in the motion for a new trial. But attached to the petition for writ of error *coram nobis* were a number of exhibits supporting appellant's plea of insanity as follows:

1.   A certified transcript of a proceeding in Oklahoma in which appellant had been adjudged insane on the verdict of a jury.

2.   The affidavit of a practicing physician residing at Idabel, Oklahoma, that he had examined appellant and knew him to be insane.

3.   An affidavit in which the affiant stated he had known defendant for thirteen or more years during which time appellant had been considered insane.

4.   The affidavit of eleven witnesses who described the fits or spells with which they said appellant was' afflicted.

5.   The joint affidavit of five witnesses describing the temper and conduct of appellant.

6.   The affidavit of an employee at the penitentiary, where appellant has been confined since his conviction, stating that affiant had seen appellant having several convulsions in which he would become unconscious and remain so for from fifteen to forty-five minutes, and during which time he would almost stop breathing and his pulse beat would scarcely be perceptible.

7.   The affidavits of five physicians responding to hypothetical questions in which they state their opinion that the person inquired about was insane.

8.   The affidavit of appellant's father that affiant and his wife were first cousins and that there was insanity and epilepsy in his family, and that appellant was only nineteen years old and had never been intelligent.

The prayer of the petition as has been stated was denied, and that proceeding is before us on *certiorari.*

*Smith & Haynie* and *Jones & Owens,* for appellant.

On the main case:

1.   The evidence does not support the verdict, and a new trial should have been granted for this cause. Where the evidence is legally insufficient to support a verdict, it should be set aside.   25 So. 287; 41 Fla. 77.   A trial court, on a motion for new trial, is not bound by the rule as to the conclusiveness of a jury's finding on con-

flicting testimony, but it is its duty, when not satisfied with the verdict, to set it aside and grant a new trial. 60 Pac. 847; 128 Cal. 322; 36 S. E. 967, 111 Ga. 887.

2. A new trial should have been granted because of appellant's insanity, evidence of which was discovered by his counsel after the trial, but was not known to them, and could not by reasonable diligence have been discovered by them prior to the trial. This was newly discovered evidence, material to appellant's defense, which would have justified the granting of a new trial. Kirby's Dig., § 2422; *Id.,* § § 1550-1552; *Id.* § 2277; 69 Ark. 167; 72 Ark. 531; 104 Ark. 43; 88 S. W. 818; 77 Ark. 425; 66 Ark. 612.

On the record brought up on *certiorari:*

The circuit court which tried the case had jurisdiction, and should have allowed the writ of error *coram nobis.* In addition to the numerous affidavits attached to the petition, a certified copy of the criminal court record of McCurtain County, Oklahoma, was also attached, showing that this petitioner was adjudged insane by a jury on December 12, 1912, and this was within six months of the time of the trial here. This showing alone would have justified the issuance of the writ. 35 Ark. 518; 61 Pac. 690; 72 Ark. 531; 532; 77 Ark. 418; 69 Ark. 167; 97 Ark. 131; 58 Ark. 518; 104 Ark. 43.

*Wm. L. Moose,* Attorney General, and *Jno. P. Streepey,* Assistant, for appellee.

On the main case:

1. The evidence is sufficient to sustain the verdict.

2. There was no error in refusing to grant a new trial on the ground of newly discovered evidence. It is only where the trial court has reasonable grounds for believing a defendant to be insane, that it is its duty to empanel a jury to inquire into his mental condition.

On the *certiorari* case:

The petition for writ of error *coram nobis* was properly denied. It is manifest from a reading of petitioner's testimony in this record, from his logical story with its many details, and the lucidity with which he gave his

reasons for doing things in a certain manner, that he understood the charge, the nature of the crime he was alleged to have committed. His statement of what occurred was logical and reasonable and not such a statement as would have been made by an insane person. 69 Ark. 167-173.

SMITH, J., (after stating the facts). From the facts stated it is manifest that the verdict of the jury has settled the questions raised on this appeal, that there was evidence legally sufficient to support the jury's finding that the killing was the result of a premeditated intent, and the judgment of the court below on the main case must be affirmed.

*Certiorari* must be, and is, the appropriate remedy to review the action of the trial court in refusing the petition for writ of error *coram nobis.* No provision is made by the statute for an appeal from an adverse ruling by the trial judge on such a petition, and, as in cases of bail, *certiorari* is the remedy which has been moulded by the law to supply this deficiency. The practice in these cases is well settled by the decisions of this court. In the case of *Hydrick* v. *State,* 104 Ark. 43, it was said: "This court has repeatedly held that after the expiration of the term at which a judgment of conviction was rendered, the court may, upon proper showing of insanity of the accused at the time of the trial, which was not suggested at the trial, issue the writ of error *coram nobis* for the purpose of inquiring into that question, and to empanel a jury for that purpose. *Adler* v. *State,* 35 Ark. 517; *Howard* v. *State,* 58 Ark. 229; *State* v. *Helm,* 69 Ark. 167; *Linton* v. *State,* 72 Ark. 532; *Ince* v. *State,* 77 Ark. 418. We held in *Johnson* v. *State,* 97 Ark. 131, that an affirmance by this court of a judgment of conviction did not preclude the trial court from issuing the writ for the purpose of inquiring into the sanity of the accused at the time of the trial." In the Hydrick case, *supra,* the writ was prayed after an appeal to this court had been affirmed, and the action of the trial court in sustaining a demurrer to the petition for the writ was reversed

and the cause remanded with directions to overrule the demurrer to the petition.

The trial court was not asked, either at or before the trial of the main case, to empanel a jury to inquire into defendant's sanity. Such a proceeding is authorized by section 2277 of Kirby's Digest, which reads as follows: "If the court shall be of the opinion that there are reasonable grounds to believe that the defendant is insane, all proceedings in the trial shall be postponed until the jury be empaneled to inquire whether the defendant is of unsound mind, and if the jury shall find that he is of unsound mind the court shall direct that he be kept in prison, or conveyed by the sheriff to the lunatic asylum, and there kept in custody by the officers thereof until he is restored, when he shall be returned to the sheriff, on demand, to be reconveyed by him to the jail of the county." If the issue of defendant's sanity had been passed upon under the provisions of the section quoted, or by a jury upon the appellant's trial under the plea of not guilty, then this writ would not lie; but that question was not raised and has not been determined, and we think a showing has been made which authorizes and requires the issuance of the writ to determine defendant's sanity at the time of the trial. And if, upon the trial of that issue, the jury shall find that the appellant was insane at the time of his trial, then the judgment herein affirmed will be set aside, otherwise it will remain in full force and effect.

We think it proper to mention the fact that the trial was had before a special judge and the motion for a new trial was overruled by him, and the judgment pronounced by him, while the petition was heard by the regular judge, and on the hearing before him he had only the record which we have before us.

Upon consideration of the recitals of facts contained in the affidavits accompanying the petition, the truthfulness of which we can not know, and of the answers of the physicians to the hypothetical questions propounded to them, we conclude that a showing was made which would

have authorized 'the court below to grant the prayer of the petition, and the court's action in dismissing it is therefore reversed and the cause will be remanded with directions to the court to order a jury empaneled to inquire into appellant's sanity at the time of his trial.