CUNNINGHAM *v.* STATE.

Opinion delivered June 27, 1921.

1.  HOMICIDE—INSTRUCTIONS—ASSUMPTION OF FACT OF KILLING.—In a prosecution for murder, where defendant denied that he killed deceased and offered no proof on self-defense, instructions upon self-defense and deliberation and premeditation were not abstract and did not constitute an assumption by the court that the killing was done by defendant.

2.  HOMICIDE—INSTRUCTION AS TO CIRCUMSTANTIAL EVIDENCE.—An instruction that circumstantial evidence is legal and competent, and that "if it is of such a character as to exclude every reasonable hypothesis, other than that the defendant is guilty, it must be received, just as direct evidence is received," *held* not objectionable where considered in connection with other instructions on the subject of reasonable doubt.

3.  CRIMINAL LAW—REPETITION OF INSTRUCTIONS.—It was not error to refuse to give instructions fully covered by other instructions given.

4.  CRIMINAL LAW — NEW TRIAL — NEWLY-DISCOVERED EVIDENCE.—A motion for new trial on the ground of newly-discovered evidence relating to defendant's mental condition at the time of the al-

leged commission of the crime was properly refused where there was no showing of diligence in discovery and production of such evidence.

Appeal from Columbia Circuit Court; *C. W. Smith,* Judge; affirmed.

*Henry Stevens,* for appellant.

1. The court erred in its instructions given for the State. They are abstract, misleading and prejudicial; also arbitrary, and assume the facts not proved and tell the jury what inference may be drawn from the facts. Hughes on Instructions, §§ 505-6, 309; *Ib.,* § 8; 59 Ark. 422.

2. It was error to refuse the instructions asked by defendant and in amending them and in their modification. The circumstances show a conflict in the evidence and a reasonable doubt of defendant's guilt, and the court should have instructed the jury that the doubt should be resolved in favor of defendant. Hughes on Instructions, § 312.

3. It was error to refuse a new trial for newly-discovered evidence. When one is accused of crime, the question of his sanity or insanity is one for the jury. 133 Ark. 39.

*J. S. Utley,* Attorney General, *Elbert Godwin* and *W. T. Hammock,* Assistants, for appellee.

1. There was no error in the court's instructions on self-defense. The instructions were properly given, as testimony was introduced tending to show self-defense. A defendant accused of homicide who pleads self-defense must show that he used all means consistent with his safety to avert the danger and avoid the necessity of killing, and if he could avoid the necessity of killing by retreating it was his duty to retreat. 73 Ark. 568.

The admissibility of circumstantial evidence in criminal cases is well settled. 8 R. C. L., § 172, pp. 179-180.

2. The court properly modified appellant's requests. 109 Ark. 383.

3. There was no error in refusing a new trial for newly-discovered evidence. Due diligence was not shown, and the question as to whether or not appellant used due diligence was a question of fact for the jury to determine. 135 Ark. 435. The motion was addressed to the sound discretion of the court, and no abuse of discretion is shown. 41 Ark. 229; 54 *Id.* 364.

McCULLOCH, C. J. Appellant was charged in the indictment with murder in the first degree, but was convicted of voluntary manslaughter. The charge is that he shot and killed Walter Allen. According to the testimony adduced at the trial appellant and Allen were living together in the same house on a farm which Allen had rented from the owner. Appellant was working on shares with Allen. Appellant had a family consisting of a wife and children, but it does not appear from the evidence that Allen had any family, at least none of them lived with him. The house in which they lived was a small one, and was divided by an open hall through the center, and was situated from one hundred to two hundred yards from a public road.

There was no eye-witness to the killing, at least none was introduced as a witness. Allen's body was found lying in the open hall and a double-barrel shotgun which he owned was found in the grasp of his right hand. Two witnesses, Gore and Watkins, testified that on the morning of the day during which the dead body of Allen was found in the hall, they were passing along the road near the house where appellant and Allen lived and saw two men going toward the house talking to each other and one of them was rather excitedly gesturing; that the two men passed behind the house from them and immediately thereafter they heard a gunshot; that after the men passed out of their view they (witnesses) passed along about fifty yards up the road and then saw a man lying in the hall and saw a boy walking across the hall. The boy appeared to be about eight or ten years old, and then witnesses also stated that the boy passed in front of the house after they heard the gunshot. One of the

witnesses testified that he recognized appellant as one
of the two men who were walking toward the house
shortly before they heard the gunshot. Another witness,
Miss Snyder, who lived but a short distance from the
house where appellant and Allen lived, testified that on
the morning of the day on which the body was found she
was out in front of her father's house and saw appel-
lant and Allen just before she heard the gun; that she
saw the two men going toward the house talking to each
other and gesticulating, and after about the length of
time had elapsed for them to get into the house she heard
the gunshot; that she saw appellant come out of the
house and walk toward a tree in the back yard and then
go back to the house, and that he then went down to the
field where a Mr. Daniels and appellant's daughter were
at work. This witness also testified that she saw a boy
go toward the house just before the gun fired, but she
did not know whether he entered the house; that the boy
was appellant's son and was about nine or ten years old.
She recognized appellant and Allen as being the two men
whom she saw going toward the house just before the
gun was fired.

Appellant testified as a witness and denied that he
shot Allen. He testified concerning the trouble which
had arisen between him and Allen; that Allen had abused
and mistreated him and had also abused his daughter
and offered her certain indignities. He testified that on
the morning in question he was working in the field when
Allen came out and gave him directions about the things
to be done on the farm, and that Allen struck him and
knocked him down; that the last time he saw Allen the
latter directed him to go and get a trespassing animal
out of the field. Appellant stated that after looking for
the animal, and, failing to find it, he went back through
the corn to see if he could find Allen and went to the
house after water and saw the body of Allen lying in
the hall with the shotgun grasped in his hand. There
was other testimony in the case with reference to Allen's
conduct toward appellant and toward appellant's daugh-

ter. There are other circumstances detailed in the evidence which are unnecessary to mention.

The court submitted the issues to the jury upon instructions covering all the phrases of the law of homicide, and the instructions were all in the forms which have received the approval of this court. It is not contended that there were errors in any of the instructions, but it is insisted that the court erred in giving an instruction on the law of self-defense and also erred in giving one on the subject of deliberation and premeditation as elements of murder. The argument is that, since appellant denied that he killed the deceased and did not offer any proof on self-defense, these instructions were abstract and were calculated to mislead the jury to appellant's prejudice. The contention is that the giving of these instructions constituted an assumption by the court that the killing was done by appellant. It is unnecessary for us to determine whether or not there was any proof which would have justified a finding by the jury that the killing was done in self-defense. But we do not think that the giving of either of the instructions referred to constituted any assumption of fact by the court. It is not contended that any particular language of either of the instructions assumed the existence of any fact, but the argument is that the mere giving of the instructions on those subjects presupposed that the killing was done by appellant, and constituted an assumption of that fact. It is true that appellant made no claim of self-defense, but, on the contrary, asserted in his testimony that he did not commit the homicide and was not present when it was committed. That issue was properly submitted to the jury, and the instructions on self-defense and on the subject of premeditation and deliberation, as essential elements of the crime of murder in the first degree, were given for the benefit of the accused. Even conceding that there was no evidence to justify a finding that the killing was done in self-defense, we can not say that any prejudice could possibly have resulted from the giving of these instructions. It was tantamount to

saying to the jury that if they found that the accused did the killing they should consider the law of self-defense as declared by the court. We think there was no prejudice resulting from the giving of these instructions.

Objection was made to instruction number 13, which reads as follows:

"The court further instructs the jury that circumstantial evidence is legal and competent in criminal cases, and if it is of such a character as to exclude every reasonable hypothesis, other than that the defendant is guilty, it must be received just as direct evidence is received."

We see no objection to the substance of this instruction, whatever criticism may be made to the form. The proposition of law stated therein is correct when considered in connection with other instructions given to the jury on the subject of reasonable doubt. *Jones* v. *State,* 61 Ark. 88; *Bost* v. *State,* 140 Ark. 254.

The next assignment relates to the ruling of the court in modifying appellant's instruction number 1 by striking out the last sentence, as follows:

"You are instructed, the law presumes the defendant to be innocent of the crime charged, and this presumption continues in his favor throughout the trial, step by step; and you can not find the accused guilty of any of the crimes charged in the indictment until the evidence in the case satisfies you beyond a reasonable doubt of his guilt. *And, as long as you have a reasonable doubt as to the existence of any one of the several elements necessary to constitute the offense or offenses charged, the accused can not be convicted.*"

The instruction was complete without the last sentence, and in this connection with other instructions completely declared the law as to the burden of proof and reasonable doubt. Indeed the language stricken out, when considered as an independent declaration of law, is erroneous. *Carr* v. *State,* 81 Ark. 589.

Instruction number 8 given on the court's own motion and instruction number 7 given at appellant's request stated to the jury, in substance, that it devolved upon the State to prove beyond a reasonable doubt each of the material allegations in the indictment.

The court also modified instruction number 3, requested by appellant, but the language stricken out was also covered by another instruction given on the court's own motion.

Finally it is insisted that the court erred in refusing to grant a new trial on the ground of newly discovered evidence. In the motion for a new trial appellant alleged the discovery, subsequent to the trial, of evidence which tended to prove that appellant at the time of the killing of Allen was insane "or was under such a defective reason as not to have known the nature of the act of killing." It is further alleged in the motion that the fact of appellant's insanity was unknown to appellant's counsel until after the trial and verdict. Affidavits were filed in support of these allegations. It appears from the record that appellant had been living in Columbia County for a number of years, and that his counsel had been personally acquainted with him to some extent for a long time. Appellant was introduced as a witness at the trial in his own behalf, and testified concerning his relations with Allen and all of the things that transpired between them on the day of the killing. There is no diligence shown in the discovery and production at the trial of evidence of appellant's alleged mental incapacity. The fact that the newly discovered evidence related to appellant's mental condition at the time of the alleged commission of the crime does not alter the rules and practices with reference to requiring diligence in testing the sufficiency of a motion for new trial grounded on newly discovered evidence. Diligence must be shown on a motion based on that ground as well as on the ground of newly discovered evidence in regard to other defenses. There are other available remedies for establishing,

either before or after the verdict, the fact of the insanity of the accused at the time of the trial. The accused may, before the trial, cause an inquiry to be made as to his sanity for the purpose of postponing the trial; or after trial when the accused appears for judgment he may show that he is insane. *Duncan* v. *State,* 110 Ark. 523. After the expiration of the term the trial court, upon proper showing of insanity of the accused at the time of the trial, may, when it appears that the question of insanity was not suggested at the trial, issue the writ of error *coram nobis* for the purpose of inquiring into that question, and empaneling a jury for that purpose. *Hydrick* v. *State,* 104 Ark. 43; *Hodges* v. *State,* 111 Ark. 22. It is not alleged in the motion in this case that appellant was insane at the time of the trial, and therefore the court did not treat it as a motion to inquire into the question of the insanity of the accused for the purpose of suspending judgment. *Duncan* v. *State, supra.* The alleged discovery of evidence can not, therefore, afford grounds for a new trial, without the proper showing of diligence.

Finding no error in the record, the judgment is affirmed.