RIDGEWAY v. STATE

5129                                        389 S. W. 2d 617

Opinion Delivered May 3, 1965.

[Rehearing denied May 24, 1965.]

*Ward & Mooney,* for Petitioner.

*Bruce Bennett,* Atty. General, By: *Beryl F. Anthony, Jr.,* Asst. Atty. General, for Respondent.

Ed. F. McFaddin, Associate Justice. The present case is a sequel to *Ridgeway* v. *Catlett,* 238 Ark. 323, 379 S. W. 2d 277. That case was decided on June 1, 1964; and in it we said that since Ridgeway had been convicted of the crime of embezzling public funds, no executive pardon could restore to him eligibility to hold public office (Art. 5, § 9 of the Arkansas Constitution). As a direct result of that holding, Ridgeway filed, on July 16, 1964, in the Circuit Court of Jackson County, Arkansas, his pleading entitled, ''Petition for Writ of Error *Coram Nobis,*'' in which he sought to expunge from the records of that Court his conviction for said embezzlement. The conviction was based on a plea of guilty which Ridgeway made in open Court on September 5, 1955.

The regular Judge of the Jackson Circuit Court is Hon. Andrew W. Ponder. He exchanged circuits with Hon. P. S. Cunningham, Chancellor of the 8th Chancery District; and Judge Cunningham presided over the hearing on this motion for writ of *error coram nobis.* Testimony was heard in open Court on August 21, 1964, the witnesses being Mr. Ridgeway, Hon. Judson Hout, an attorney of Newport, and Hon. Andrew Ponder, the Judge who accepted Ridgeway's plea of guilty and sentenced him to the penitentiary in 1955. At the conclusion of the hearing Judge Cunningham denied Ridgeway's petition for writ of *error coram nobis,* and from such judgment Ridgeway prosecutes the present proceeding to this Court, which is really a petition for *certiorari.*[1]

While the motion for writ of *error coram nobis* contained a number of allegations, all were waived by Ridge-

---

[1] In *Hodges* v. *State,* 111 Ark. 22, 163 S. W. 506, we said: "*Certiorari* must be, and is, the appropriate remedy to review the action of the trial court in refusing the petition for writ of *error coram nobis.* In view of the quoted language, we treat the present case as being before us on *certiorari.*

way's present counsel when, at the opening of the trial on August 21, 1964 (from which trial comes the present appeal) Ridgeway's present counsel made the following statement:

"We are relying on the allegations in paragraph 2 and 6 where we allege that he was unable financially to obtain legal counsel of his own volition; and that he never at any time was afforded an opportunity understandingly and intelligently to waive Court appointed counsel. Legally, that is the whole substance of our lawsuit upon which we will make proof."[2]

On May 21, 1955 an information was filed by the Prosecuting Attorney in the Jackson Circuit Court, charging: that Ridgeway( during the period he was delinquent tax collector, did unlawfully and feloniously use and appropriate funds belonging to the County of Jackson and to the various school districts therein for his own uses and purposes. On the same day of the filing of the information, the Circuit Court on the motion of the Prosecuting Attorney removed Ridgeway from office as said Tax Collector, pursuant to Ark. Stat. Ann. § 41-3920 *et seq.* (1947). Ridgeway was arrested on May 21, 1955, and remained on

---

[2] Paragraph 2 of Ridgeway's said motion for writ of *error coram nobis* reads:

"This defendant under date of September 5, 1955, was allowed without benefit of legal counsel to enter a plea of guilty to a felonius crime described as embezzlement and misappropriation of public funds in his capacity as a delinquent tax collector for Jackson County, Arkansas, said crime carrying with it a possible sentence of 21 years in the State Penitentiary and forfeiture of the defendant's right to hold public office in Arkansas forever, notwithstanding said defendant, before his plea of guilty, told the Court he had desired counsel but was unable to employ an attorney because he was wholly without money or credit. After this statement by defendant in open court, the Court still did not appoint or offer to appoint a qualified attorney to consult and advise with him concerning his guilt and legal rights before accepting his plea of guilty. The action of this Court in thus accepting a plea of guilty from defendant violated the defendant's rights and violated due process of law as defined by Article 2, Section 10, The Constitution of Arkansas; Amendment No. VI to the Constitution of the United States; and Amendment No. XIV to the Constitution of the United States." Paragraph 6 of said Motion reads:

"At no time prior to acceptance of his plea of guilty to the crime charged by this Court did the defendant ever have an opportunity understandingly and intelligently to accept or waive legal counsel by appointment of the Court."

bond until September 5, 1955, when he entered his plea of guilty and was sentenced to five years in the penitentiary.

After the plea of guilty and the sentence, Ridgeway's mother went to Judge Andrew Ponder and told him that she would never believe that her son could commit such a crime if he were in his right mind. So, in order to satisfy the mother, Judge Ponder specified in Ridgeway's commitment to the penitentiary that he should be sent via the State Hospital for thirty days examination. Judge Ponder testified in the hearing in August 1964 that he never had any doubt of Ridgeway's sanity and he merely sent him to the hospital for examination and report in order to satisfy Ridgeway's mother, a very fine Christian woman. The hospital report was sent back to Judge Ponder and introduced in evidence in this case, and it showed Ridgeway to be perfectly sane. After thirty days in the State Hospital Ridgeway went on to the penitentiary and served enough of his sentence to be eligible for parole, and was later pardoned, as previously recited.

At the trial before Judge Cunningham in 1964, there was no claim that Ridgeway had ever been insane, so no issue of insanity is in this case. Among the points on which Ridgeway relies there are: (1) that he was not represented by counsel when he entered his plea of guilty in 1955; and (2) that he was not able to employ counsel and did not understand that court appointed counsel would be furnished him free of charge. Of course, these claims of Ridgeway appear to us now as an afterthought. If this Court had held in *Ridgeway* v. *Catlett, supra,* that the pardon which Ridgeway received in fact restored him to eligibility to public office, then we feel confident that no writ of *error coram nobis* would ever have been considered or filed; and this leads us to a consideration of the real purpose and extent of a petition for writ of *error coram nobis.* In *Howard* v. *State,* 58 Ark. 229, 24 S. W. 8, we said of the writ of *error coram nobis:*

"The office of the writ is to correct an error of fact in respect to a matter affecting the validity and regularity of the proceedings in the same court in which the judgment

was rendered and where the record is, when the error assigned is not for any fault of the court; those errors which precede the judgment—as error in the process, or through default of the clerk; where an infant appears by attorney, and not by guardian; where the defendant was insane at the time of the trial, or died before judgment. And this writ has been sustained where the defendant was induced to plead guilty to a charge of felony through fear and by reason of the threats of a mob.

"But it will not lie to contradict or put in issue any fact that has been already adjudicated in the action. An issue of fact wrongly decided is not error, in that technical sense to which the writ refers. If the error lie in the judgment itself, it must be corrected by appeal or writ of error to a superior court."

In *Mitchell* v. *State,* 234 Ark. 762, 354 S. W. 2d 557, we discussed in some length the matter of a writ of *error coram nobis* and cited some of our earlier cases.[3] The writ is to correct mistakes of fact, not mistakes of law. If the Trial Court made any mistake in having Ridgeway sent to the State Hospital enroute to the penitentiary, then certainly that was a mistake of law and not susceptible to being considered on writ of *error coram nobis.* But the sending of Ridgeway to the State Hospital and the examination of Ridgeway by the State Hospital officials and the report to the Circuit Court certainly shows that any possible claim of Ridgeway's insanity was before the Circuit Court and cannot now be considered on petition for writ of *error coram nobis.* See *Mitchell* v. *State, supra.*

Ridgeway's first point is his claim that he was allowed to enter a plea of guilty without having a lawyer represent him; and in making this plea he seeks to bring himself under the holdings of such cases as *Dement* v. *State,* 236 Ark. 851, 37 0S. W. 2d 191; *Carnley* v. *Cochran,* 369 U.S. 506, 8 L.Ed. 2d 70, 82 S. Ct. 884; and *Gideon* v. *Wainwright,*

---

[3] In addition to the annotations in A.L.R. cited in the Mitchell case, we call attention to the following texts and writings regarding *coram nobis*: 24 C.J.S. p. 661 *et seq.,* "Criminal Law" § 1606 *et seq.,* 49 C.J.S. p. 561 *et seq.,* "Judgments" § 311 *et seq.,;* and Am. Jur. Vol. 30A, p. 687, "Judgments" § 734 *et seq.*

372 U.S. 335, 9 L.Ed. 2d 799, 83 S. Ct. 792, 93 A.L.R. 2d 733. But the evidence in this *coram nobis* hearing clearly and without contradiction shows that Ridgeway stated in open Court that he did not desire an attorney to represent him when he was sentenced in 1955. Ridgeway testified on direct examination in the *coram nobis* hearing:

"Q. Did the Court ask you if you had an attorney?

"A. Yes.

"Q. All right, if you remember, what did you tell him?

"A. I said 'No,' and he said, 'Well, the Court will appoint you an attorney.' And I said I didn't want an attorney, that I would act as my own attorney and throw myself on the mercy of the Court."

Then on cross examination Ridgeway testified:

"Q. So to recap it, if I do it correctly, the Court asked you if you wanted the Court to appoint you an attorney. You said that you didn't want an attorney, you couldn't afford it, anyway you would be your own attorney and throw yourself on the mercy of the court.

"A. I don't think I said I couldn't afford it at that time, I am trying to recall exactly what was said and I am almost; well, I knew what was said that he asked me, the Judge asked me if I wanted an attorney that the Court would appoint me an attorney; I said I did not want an attorney, that I would act as my own attorney and throw myself on the mercy of the court.

"Q. There was no conversation then between you and the Judge with respect to the fact that you couldn't afford an attorney. You merely stated you didn't want an attorney, you would act as your own attorney and throw yourself on the mercy of the court?

"A. I don't remember any conversation, Mr. Harkey.

"Q. Did I state correctly what took place?

"A. Yes.

"Q. Mr. Ridgeway, just a few more questions, First, so the record will be perfectly clear: There was no conversation now on the date of sentence between you and Judge Ponder about you couldn't afford an attorney?

"A. Between Judge Ponder and myself?

"Q. That is right.

"A. No, sir."

Hon. Judson Hout, who represented Ridgeway in other matters, testified that Ridgeway told him in 1955 that he (Ridgeway) had decided he did not want an attorney because he was going to plead guilty and throw himself on the mercy of the Court. Judge Andrew Ponder, who accepted Ridgeway's plea of guilty and gave him the minimum sentence in 1955, testified in this *coram nobis* hearing that before he accepted Ridgeway's plea he told him (Ridgeway) in open Court that the Court would appoint him an attorney who would serve free of charge; and that Ridgeway stated in open Court that he did not want an attorney because he was guilty and wanted to throw himself on the mercy of the Court.

Thus, Ridgeway and the other two witnesses all agree that before Ridgeway entered his plea of guilty in 1955 he was offered counsel and refused the same. Under these facts, Ridgeway does not bring himself under the rule of the cases on which he relies.

Mr. Ridgeway's second point is that he did not understand that he would have a lawyer without cost, even if the Court might appoint one; and so he claims that he did not "intelligently and understandingly" refuse counsel. But the evidence preponderates against him on this point. Judge Ponder testified at length how Ridgeway came to him in chambers desiring to enter his plea, how Judge Ponder required him to appear in open Court, how the Court painstakingly and sympathetically discussed the case with Ridgeway in open Court, and how the services of free counsel were offered to Ridgeway and declined

"Q. And did you explain to him that under our system he could have a court appointed attorney free of charge if he desired?

"A. I certainly did."

There is also presented a point that Hon. Judson Hout should not have been allowed to testify in the *coram nobis* proceedings because he had represented Ridgeway in other matters. There are several answers to this point, but only one need be mentioned. Mr. Ridgeway testified:

"Q. Did Mr. Jud Hout represent you in that matter?

"A. No, sir, he did not.

"Q. In any conversation that you did have with Mr. Jud Hout did he ever suggest that you ought to enter a plea of guilty?

"A. No, sir, he did not."

We conclude that the Trial Court was correct in denying the motion for writ of *error coram nobis*.