IRBY *v.* BARRETT.

4-6886                                                     163 S. W. 2d 512

Opinion delivered July 6, 1942.

*Arthur Sneed,* for appellant.

*Buzbee, Harrison & Wright,* for appellee.

SMITH, J. Appellant filed in the court below a petition for a writ of mandamus requiring Joe C. Barrett and Harvey G. Combs, chairman and secretary of the Democratic State Committee, respectively, to certify him as a candidate for the office of state senator from the 28th Senatorial District, of which district Clay county is a part. He alleged that he had been a resident of Clay county for many years; that he is 64 years of age and a qualified elector of that county, and had been all his life a Democrat, and that he is a member of the Democratic Party in Clay county, and that he had complied with all the laws of the state and all the rules of the Democratic Party to become a candidate for the nomination of his party as its candidate for the senate in the district of which Clay county is a part; but notwithstanding these facts the defendants had refused to certify his name as required by the rules of the Democratic Party.

An answer was filed, which did not deny any of these allegations, and averred that defendants had refused to certify petitioner's name because petitioner is legally ineligible to hold the office of state senator by virtue of art. 5, § 9, of the Constitution of 1874, which prohibits any person convicted of the embezzlement of public money or other infamous crime from serving as a member of the General Assembly or from holding any office of trust or profit in this state.

A demurrer was filed to this answer, which was overruled, and petitioner's cause of action was dismissed when he stood on his demurrer, and from that decree is this appeal.

Appellees justify their action by citing the cases of *State, ex rel. Attorney General,* v. *Irby,* 190 Ark. 786, 81 S. W. 2d 419; *Winton* v. *Irby,* 189 Ark. 906, 75 S. W. 2d 656, and *Irby* v. *Day,* 182 Ark. 595, 32 S. W. 2d 157.

The case first above cited was a *quo warranto* proceeding to oust petitioner from the office of county judge of Clay county to which he had been elected, and

it was there held that petitioner was ineligible to hold that office because of his conviction in the federal district court of the crime of embezzling postoffice funds, notwithstanding his unconditional and full pardon for that offense by the President of the United States.

It is urged that it would be a vain and useless proceeding to permit petitioner to be a candidate for an office which he could not fill, if he were elected to it.

We cannot anticipate what action the senate might take in the event petitioner were nominated and then elected senator from the district in which he resides. Section 11 of art. 5 of the Constitution provides that "Each house (of the General Assembly) shall appoint its own officers, and shall be sole judge of the qualifications, returns and elections of its own members."

The last of these Irby cases (190 Ark. 786, 81 S. W. 2d 419) was decided by a divided vote of 4 to 3. It is possible, and within the power of the senate, to adopt the view of the dissenting judges, rather than the opinion of the majority, in that case, in which event petitioner would be eligible to serve as a member of the senate.

It was the opinion of the majority in that case that one convicted, in a federal court, of embezzlement of money belonging to the United States, is ineligible to hold any office of trust or profit within this state notwithstanding the Presidential pardon, since the pardon restored merely his civil rights, as distinguished from his political privileges.

It was the opinion of the majority in that case that the disqualification of petitioner to hold office was no part of the punishment for the crime for which petitioner had been convicted and that, therefore, the pardon could not remove his disqualification for holding office.

It was also the opinion of the majority that it was immaterial that petitioner had not been convicted for a violation of a law of this state, and that a conviction in any jurisdiction barred petitioner from holding office as effectively as a conviction for a violation of the laws of this state would have done.

It was the opinion of the minority that all these holdings were contrary to the great weight of authority. It was said in the minority opinion that "It has been held, upon great consideration, that a conviction and sentence for felony in one of the states and the disabilities arising from the same would not come within the inhibition of statutory and constitutional provisions of another state and the disqualifications therein denounced. Greenleaf on Evidence, 15th ed., § 376."

It was the opinion also of the minority that the pardon removed, not only the guilt of the one pardoned, but likewise the legal infamy and all other consequences arising out of the conviction, and that it was futile to say that ineligibility to hold office was not a part of the punishment for crimes denounced by § 9 of art. 5 of the Constitution. The concession appears to have been made in the majority opinion that if ineligibility to hold office was a part of the punishment, this ineligibility was removed by the pardon.

The senate has the power to accept either the majority or the minority view, and its action is beyond the power of review by this court, as the senate is the sole judge of the qualification of its members.

But aside from these considerations, we are of the opinion that the chairman and secretary of the state committee acted without authority in refusing to certify petitioner as a candidate. Certainly no law of this state confers that power, and we are cited to no rule of the party conferring it. Certain it is that the chairman and secretary of the state committee are clothed with no judicial power. Their duties are purely ministerial, and in the matter under consideration are defined by § 58 of the Rules of the Party, which reads as follows: "Sec. 58. All candidates for United States senator, representative in Congress and all state and district offices shall file the prescribed pledge with the secretary of the state committee and all candidates for county and township offices shall file the prescribed pledge with the secretary of the county committee, not later than 12 o'clock noon on the 90th day before the preferential

primary election, and all candidates for municipal offices (including candidates for county and city committeemen) shall file their pledges with the secretary of the county committee and the city committee not later than 12 o'clock noon on the 30th day before the preferential primary election.

"The name of any candidate, who shall fail to sign and file said pledge within the time fixed shall not appear on the official ballot in said primary election.

"The chairman and secretary of the state committee shall certify to the various county committees not later than 30 days before the day of the election the names of all candidates who have complied with the rules herein prescribed, and the name of no other candidate for such office shall be printed on the ballots by the county committee."

It was held in the case of *Williamson* v. *Montgomery*, 185 Ark. 1129, 51 S. W. 2d 987, that no one could become a candidate for a party nomination for an office without complying with the rules of the party; but it was also held in that case that where the committee or officer conducting a primary election acted fraudulently or in such an arbitrary manner as to prevent a person who, in good faith, sought to comply with the rules, the courts would require the party officers to comply with the party rules. There is no intimation here that the chairman and secretary of the committee have acted fraudulently, but we think they have acted without authority conferred either by the laws of this state or the rules of the party.

Rule 58, above quoted, requires the chairman and secretary to certify the names of all candidates "who have complied with the rules herein prescribed." The fact stands undisputed that the petitioner has complied with these rules and, having done so, no duty rests upon, nor is there any power vested in, the chairman and secretary of the committee except to perform the ministerial duty of certifying the names of petitioner and all others who have complied with the party rules.

If it be said—and it is said—that the Supreme Court has decided that petitioner is ineligible to hold a public

office, it may be answered that this proceeding is not a contest for an office nor a proceeding to oust one from office. The only question here is whether petitioner has complied with the laws of the state and the party rules sufficiently to become a candidate for office; and the fact is undisputed that he has done so.

If the chairman and secretary of the committee have the right to say that because of the decision of this court petitioner is ineligible to be a candidate for office, they may also say, in any case, that for some other reason a candidate is ineligible. For instance, it has been held by this court in many election contests that one must pay his poll tax; that he must do so after proper assessment in the time and manner required by law, and that otherwise he is not eligible even to vote, and unless he were a voter he could not hold office. So with other qualifications, such as residence. May this question be considered or decided by the chairman and secretary of the committee? It may be that such power can be conferred upon them by laws of this state or the rules of the party; but it is certain that this has not yet been done. If this can be done, and should be done, the door would be opened wide for corrupt and partisan action. It might be certified that a prospective candidate has sufficiently complied with the laws of the state and the rules of a political party to become a candidate, and, upon further consideration, that holding might be recalled; and this might be done before that action could be reviewed in a court of competent jurisdiction and reversed in time for the candidate to have his name placed on the ticket. It would afford small satisfaction if, after the ticket had been printed with the name of the candidate omitted, he have a holding by the court that the name should not have been omitted.

We are cited to only two cases in point, and in view of the fact that this opinion must be rendered within a week after the submission of the cause, if the petitioner is to have redress which will require that he be certified as a candidate, the time has not been afforded for the investigation which otherwise would have been made.

But these two cases are exactly in point and are consonant with our view that the chairman and secretary of the state committee have only a ministerial duty to perform, and have no right to exclude the name of a candidate because, in their opinion, he is ineligible and could not hold the office, whether that ineligibility arose out of a conviction for a felony or any other cause which would render him ineligible.

The two cases to which we have referred are *Young* v. *Beckham,* 115 Ky. 246, 72 S. W. 1092, decided by the Court of Appeals of Kentucky, and the case of *Roussel* v. *Dornier,* 130 La. 367, 57 So. 1007, 39 L. R. A., N. S., 826.

In the first of these cases the facts are so similar and the reasoning so convincing that we quote somewhat extensively from it. The first sentence in the opinion in that case reads as follows: ''PAYNTER, J. The purpose of this proceeding is to compel the Democratic Committee to place the name of the appellee, J. C. W. Beckham, on the ballot as a candidate for the office of governor before the Democratic primary election called for May 9, 1903. The question of his eligibility has been raised, and the committee refuses to place his name upon the ballot. The question to be determined from the pleading is whether the governing authority of the party has called a primary election, and, if so, (a) whether the statute authorizes the holding of primary elections to nominate candidates for state offices; (b) whether the committee can refuse to place his name upon the ballot because they think he is ineligible to re-election; (c) whether, by proceeding in mandamus, the committee may be compelled to place his name upon the ballot used at the primary as a candidate for governor.''

The opinion does not state upon what ground the committee found Beckham to be ineligible. The facts upon which the committee found Beckham to be ineligible were not in dispute, as the opinion does not state them. Probably the Democratic State Committee had concluded that a man had aspired to the nomination of their party for the highest office in the state who could not serve if he were nominated and elected. The ground of a candi-

date's ineligibility would be immaterial. It would be unimportant whether he had been convicted of a felony or was ineligible for some other reason. If he were ineligible, he was ineligible regardless of the cause of the ineligibility.

The Kentucky court did not consider the correctness of the committee's finding that Beckham was ineligible to be a candidate. That question was pretermitted and not even referred to, the opinion being based solely upon the question of the power of the committee to exclude the name of a candidate. In holding that the committee did not have this power it was there said: "We are of the opinion that the committee had no right to raise the question of the appellee's eligibility to re-election to the office of governor. The governing authority of the party has no right to determine who is eligible under the laws of the land to hold offices. It can call primary elections and make proper rules for their government, but has no right to say who is eligible to be a candidate before the primary. The persons who are entitled to vote at the primary are the ones to determine who shall be selected as their candidate for a particular office. If the committee can say who is not eligible to be nominated as party's candidate for office, they can, on the very last day before the ballots are printed, refuse to allow a person's name to go on the ballot upon the pretext that he is ineligible, and thus prevent his name from appearing upon the official ballot. They could thus destroy one's prospect to be nominated, for the rules of procedure in courts are necessarily such that no adequate relief could be afforded the party complaining, if at all, until after the primary election had been held. If the committee or governing authority has the authority to decide the question as to who is eligible to hold an office or be a candidate before a primary election, then they would have a discretion and judgment to exercise that could not be exercised by a mandamus. The most that could be done by such a writ would be to compel them to act upon the question."

In the second case above cited the Supreme Court of Louisiana, with equal emphasis, denied the right of a party committee to pass upon the eligibility of a candidate for the nomination of that party as its candidate for office. A headnote in that case reads as follows: "1. A Democratic parish committee has no power to pass upon the eligibility of candidates for public office, as they are not charged with judicial functions nor clothed with judicial power." Parish committees in Louisiana correspond with county committees in this state.

We conclude, therefore, that the chairman and secretary of the state committee exceeded their power in refusing to perform the ministerial duty of certifying petitioner as one who had complied with the laws of the state and the rules of the party, as he admittedly has done.

The decree of the court below will, therefore, be reversed, and the cause will be remanded with directions to award the writ of mandamus.

GRIFFIN SMITH, C. J., dissenting. In *Irby* v. *Day,* 182 Ark. 595, 32 S. W. 2d 157, ". . . we expressly held that Irby was disqualified to receive the democratic nomination to public office in this state because of his previous conviction of embezzlement of public funds. Therefore, any question as to his conviction resting in a foreign jurisdiction is laid at rest, and we shall not again consider it. The sole question here presented for consideration is, Does a pardon by the chief executive restore to Irby all civil rights and political privileges enjoyed by him prior to his conviction?"[1] The opinion was delivered Nov. 3, 1930. The pardon came nearly three months later.

The author of the opinion in *Irby* v. *Day* (the preceding quotation having been taken from *State Ex. Rel. Attorney General* v. *Irby,* 190 Ark. 786, 81 S. W. 2d 419) said: "Appellant's second and last contention for a reversal of the judgment is that the plea did not con-

---

[1] Irby was sentenced February 17, 1922, on a charge of embezzling post office funds. He entered a plea of guilty. February 19, 1931, President Hoover issued a pardon, "the purpose being to restore Irby's civil rights."

stitute a defense to the cause of action. The plea was sufficient to show that the appellant was ineligible to hold the office of representative from Clay county, and for that reason had no right to contest appellee's certificate of nomination. Section 9 of art. 5 of the constitution of 1874 provides that no person convicted of embezzlement of public money shall be eligible to hold an office of representative in the general assembly."

From what I have been able to ascertain by reading the majority opinion of today, and from discussions in conference, it is not intended that *State Ex Rel. Attorney General* v. *Irby* be overruled. On the contrary, my understanding is that if the result brings about an impairment of the opinion written by Chief Justice JOHNSON, a majority of the justices did not so intend. In other words, there were not four votes to overrule the former holding. We have, then, reaffirmation of the rule that one convicted of embezzling public money may not hold office, and this status is not altered by pardon.

By circuitous construction the opinion in *State* v. *Irby* is bypassed. It is now held that the state committee could not exercise a judicial function by deciding that Irby was not eligible; that the committee's functions were ministerial; that its members must close their vision and their minds to what this court has said on previous occasions—all this because, as it is argued, Irby might be nominated and elected, and under art. 5, § 11, of the constitution, he could be seated.

Unless it should be held that the presidential pardon restored appellant's political rights, as well as his civil rights, I do not agree that if elected he can be seated by the senate. Section 11 of art. 5 of the constitution authorizes each house of the general assembly to appoint its officers; and it shall be the sole judge of the qualifications, returns and election of its own members when there has been an election. But this right must be read in connection with art. 5, § 9, and with § 8 of art. 5 when it is applicable. Section 8 provides: "No person who now is or shall be hereafter a collector or holder of public money, nor any assistant or deputy of such holder or collector of public money, shall be eligible to a seat in

692

either house of the general assembly, nor to any office of trust or profit, until he shall have accounted for and paid over all sums for which he may have been liable."

Section 9 is: "No person hereafter convicted of embezzlement of public money . . . shall be eligible to the general assembly or capable of holding any office of trust or profit in this state."

Effect of the majority opinion is to hold that the chairman and secretary of the state committee are guilty of tyrannical conduct, or at least grave indiscretion, in following the law as laid down in 1935.

It is my view that they were justified in believing the court meant what it said. They would have been insensible to a public trust had they ignored *State ex rel. Attorney General* v. *Irby*. No discretion was exercised; no judicial function was usurped. This court had already made the law. There was more understanding in what they did than would have been the case had they simulated estrangement to the law as it had been written.