RIDGEWAY *v.* CATLETT, CHAIRMAN.

5-3372                                    379 S. W. 2d 277

Opinion delivered June 1, 1964.

*Lee Ward,* for appellant.

*Bruce Bennett,* Attorney General, by *Jerry L. Patterson,* Asst. Atty. General, for appellee.

GEORGE ROSE SMITH, J. By filing the required pledges and paying his ballot fee the appellant, E. T. Ridgeway, qualified as a candidate for the nomination for the office of Governor in the coming Democratic primary. Thereafter it was brought to the attention of the appellees, the chairman and secretary of the State Democratic Central Committee, that Ridgeway had been convicted of the crime of embezzling public funds and might therefore be ineligible to hold public office. Arkansas Const., Art. 5, § 9. On May 20 the appellees notified Ridgeway that they would not allow his name to appear on the ballot as a candidate for Governor.

Ridgeway then filed this suit for a writ of mandamus to compel the appellees to perform the ministerial duty of certifying his name for inclusion on the ballot. By answer the appellees interposed Ridgeway's asserted ineligibility to serve as a defense to the suit. The chancellor sustained this defense and refused to issue the writ of mandamus.

The case presents two questions, both of public importance: First, is Ridgeway eligible to hold public office if he should be elected? Second, if he is in fact ineligible, is this the proper procedure for preventing him from becoming a candidate for the office?

Upon the first question we are unanimously of the opinion that Ridgeway is not eligible to hold public office. The language of Article 5, Section 9, is too clear to be misunderstood: "No person hereafter convicted of embezzlement of public money, bribery, forgery or other infamous crime shall be eligible to the General Assembly or capable of holding any office of trust or profit in this State."

The appellant argues that this section of the Constitution is inapplicable to him for the reason that in 1959 he received from the acting chief executive of the State a pardon which by its language purported to restore "all civil and political rights which were lost as a result of the conviction," and that therefore he is again eligible to hold public office.

This argument is without merit. Under the plain language of the Constitution it is the fact of conviction that disqualifies a person from holding public office. There is no intimation whatever that the pardoning power conferred on the Governor by Article 6, Section 8 is intended to permit such an act of clemency to supersede the clear mandate of Article 5, Section 9, which we have quoted. It is a familiar rule that where there is a specific provision, such as the disqualification that results from conviction of an infamous crime, such a provision must be given effect as against a general clause, such as the grant of the pardoning power. *Hodges* v. *Dawdy,* 104 Ark. 583, 149 S. W. 656.

Despite Ridgeway's ineligibility to hold public office, the second question is completely controlled by our decision in *Irby* v. *Barrett,* 204 Ark. 682, 163 S. W. 2d 512, a case directly in point. There, as here, the party chairman and secretary refused to certify Irby as a candidate (for state senator) because he had been convicted of embezzling public funds. There, as here, Irby brought suit for a writ of mandamus, which the trial court denied.

We reversed the decree holding that the writ should be granted. We held that the party chairman and secretary do not have the judicial authority to determine that a candidate is ineligible to hold public office and for that reason to refuse to place his name upon the ballot. Our reasoning is clearly set forth in this paragraph from the opinion:

"If the chairman and secretary of the committee have the right to say that because of the decision of this court petitioner is ineligible to be a candidate for office, they may also say, in any case, that for some other reason a candidate is ineligible. For instance, it has been held by this court in many election contests that one must pay his poll tax; that he must do so after proper assessment in the time and manner required by law, and that otherwise he is not eligible even to vote, and unless he were a voter he could not hold office. So with other qualifications, such as residence. May this question be

considered or decided by the. chairman and secretary of the committee? It may be that such power can be conferred upon them by laws of this state or the rules of the party; but it is certain that this has not yet been done. If this can be done, and should be done, the door would be opened wide for corrupt and partisan action. It might be certified that a prospective candidate has sufficiently complied with the laws of the state and the rules of a political party to become a candidate, and, upon further consideration, that holding might be recalled;. and this might be done before that action could be reviewed in a court of competent jurisdiction and reversed in time for the candidate to have his name placed on the ticket. It would afford small satisfaction if, after the ticket had been printed with the name of the candidate omitted, he have a holding by the court that the name should not have been omitted.'' ·

In discussing a similar ruling by the Supreme Court of Kentucky in *Young* v. *Beckham,* 115 Ky. 246, 72 S. W. 1092, we said:

''The Kentucky court did not consider the correctness of the committee's finding that Beckham was ineligible to ·be a candidate. That question was pretermitted and not even referred to, the opinion being based solely upon the question of the power of the committee to exclude the name of a candidate. In holding that the committee did not have this power it was there said: 'We are of the opinion that the committee had no right to raise the question of the appellee's eligibliity to re-election to the office of governor. The governing authority of the party has no right to determine who is eligible under the · laws of the land to hold offices. It can call primary elections and make proper rules for their government, but has no right to say who is eligible to be a candidate before the primary. The persons who are entitled to vote at the primary are the ones to determine who shall be selected as their candidate for a particular office. If the committee can say who is not eligible to be nominated as party's candidate for office, they

can, on the very last day before the ballots are printed, refuse to allow a person's name to go on the ballot upon the pretext that he is ineligible, and thus prevent his name from appearing upon the official ballot. They could thus destroy one's prospect to be nominated, for the rules of procedure in courts are necessarily such that no adequate relief could be afforded the party complaining, if at all, until after the primary election had been held. If the committee or governing authority has the authority to decide the question as to who is eligible to hold an office or be a candidate before a primary election, then they would have a discretion and judgment to exercise that could not be exercised by a mandamus. The most that could be done by such a writ would be to compel them to act upon the question.' ''

We think the Irby case to be sound and refuse to overrule it. Under the authority of that case the appellees, in their capacity as party officers, are not the proper persons to question Ridgeway's eligibility to hold office.

The decree is reversed and the cause remanded with directions that the writ be issued. This action is without prejudice to the institution of a proper proceeding.