STATE of Arkansas ex rel. Blanche Robinson *v.*
CRAIGHEAD COUNTY BOARD OF ELECTION
COMMISSIONERS et al.

89-68                                                         779 S.W.2d 169

Supreme Court of Arkansas
Opinion delivered November 13, 1989

406

*Paul E. Hopper*, for appellant.

*Henry, Walden & Davis*, by: *Mike Walden*, for appellee.

DARRELL HICKMAN, Justice. The question we must answer in this case is, what is the proper legal proceeding to challenge the eligibility of a candidate and seek removal of the candidate's name from a general election ballot? The answer is mandamus, coupled with a declaratory judgment action.

While the election has been held in this case, with the candidates' names remaining on the ballot, we choose to decide the central legal issue presented, even though the controversy regarding the candidates' eligibility is moot. This is not uncommon in matters pertaining to elections where there is a public interest involved and where the issue is such that it tends to become moot before it can be fully litigated. *See Cummings* v. *Washington County Election Comm'n*, 291 Ark. 354, 724 S.W.2d 486 (1987); *Carroll* v. *Schneider*, 211 Ark. 538, 201 S.W.2d 221 (1947).

The appellant, a citizen of Craighead County, petitioned the circuit court for a writ of mandamus ordering the Board of Election Commissioners to remove the names of three candidates from the November 8, 1988, general election ballot. The candidates had won in the Democratic primary the preceding March, and their names had been certified to the Board by the Craighead County Democratic Party Committee. The appellant alleged that two justices of the peace candidates, Hugh Atwood and Tom Cureton, did not reside in the districts for which they were seeking election, as required by Ark. Code Ann. § 14-14-1306(a) (1987). She claimed that candidate Bill Webster was not eligible to run for municipal judge because he was not "of good moral character" as required by Ark. Code Ann. § 16-17-209(a) (1987). The

candidates were not named as defendants in the action.[1]

The judge held a hearing ten days before the election and heard the testimony of Bill Penix and Charles Frierson, two of the three members of the Board of Election Commissioners. The two were also the secretary and chairman, respectively, of the county Democratic Party Committee. In his capacity as party secretary, Penix had investigated Cureton's and Atwood's eligibility. He disputed the appellant's claim that the candidates were not residents of the districts for which they sought election. He testified that, although Cureton had been living in an apartment complex in another district, it was because he had been divorced from his wife and had deeded the house to her. Penix was assured by Cureton that he intended to return to the proper district.

Hugh Atwood originally lived within the district which he sought to serve, but shortly after the primary, he moved to another district. When questioned by Penix, he explained that he was living in the other district only temporarily and had bought a lot in his original district, planning to return there.

The claims regarding municipal judge candidate Bill Webster (an incumbent) concerned allegations of use of public property and services to conduct private business, solicitation of charitable donations on court stationery, violations of campaign laws and lack of proper decorum and demeanor on the bench.

None of the candidates testified at the hearing. Before the appellant could present her case, the judge declared that mandamus would not lie to compel the Board of Election Commissioners to remove names from the general election ballot once those names were certified to the board by the county political party committee. The judge also found that the petition had been filed without legal basis and for the purpose of harassment. He imposed ARCP Rule 11 sanctions of $1,000 in attorney fees against the appellant and her attorney.

The judge's refusal to issue the writ was based on his reluctance to violate a well known legal maxim: mandamus may

---

[1] The appellant also contended that the act creating the Craighead County Municipal Court is special and local legislation in violation of Ark. Const. amend. 14. For a number of reasons, we will not address that issue.

not be used for the purpose of controlling discretion, reviewing findings of fact or correcting erroneous action. *See Municipal Court of Huntsville* v. *Casoli*, 294 Ark. 37, 740 S.W.2d 614 (1987); *McKenzie* v. *Burris*, 255 Ark. 330, 500 S.W.2d 357 (1973). The judge concluded that the Board of Election Commissioners had the power to make factual determinations concerning a candidate's eligibility and that, once that determination was made, mandamus could not compel an opposite result. In fact, the board does not have the authority to declare a candidate ineligible and remove his name from the ballot when there is a dispute concerning the facts or the law.

We have been reluctant over the years to allow either a party committee or a board of election commissioners to remove a candidate's name from a ballot. *See Ridgeway* v. *Catlett*, 238 Ark. 323, 379 S.W.2d 277 (1964); *Carroll* v. *Schneider, supra, Irby* v. *Barrett*, 204 Ark. 682, 163 S.W.2d 512 (1942). In *Irby*, the State Democratic party refused to certify Irby's name as a candidate for state senator because of this court's ruling that Irby's felony conviction in federal court rendered him ineligible for political office. We stated that the chairman and secretary of the state committee acted outside their authority in refusing to certify Irby as a candidate. Our reasons were compelling:

> If the chairman and secretary of the committee have the right to say that because of the decision of this court petitioner is ineligible to be a candidate for office, they may also say, in any case, that for some other reason a candidate is ineligible. For instance, it has been held by this court in many election contests that one must pay his poll tax; that he must do so after proper assessment in the time and manner required by law, and that otherwise he is not eligible even to vote, and unless he were a voter he could not hold office. So with other qualifications, such as residence. May this question be considered or decided by the chairman and secretary of the committee? It may be that such power can be conferred upon them by laws of this state or the rules of the party; but it is certain that this has not yet been done. If this can be done, and should be done, the door would be opened wide for corrupt and partisan action.

We also quoted from the Kentucky case of *Young* v.

*Beckham,* 115 Ky. 246, 72 S.W. 1092 (1903):

> If the committee or governing authority has the authority to decide the question as to who is eligible to hold an office or be a candidate before a primary election, then they would have a discretion and judgment to exercise that could not be exercised by a mandamus. The most that could be done by such a writ would be to compel them to act upon the question.

██ Since *Irby, Carroll* v. *Schneider, supra,* and *Ridgeway* v. *Catlett, supra,* were decided, the general assembly has passed a number of new election laws. One of those laws gives county political party committees the duty to investigate and make an affirmative determination of a candidate's eligibility before placing the candidate's name on the party's primary election ballot. Ark. Code Ann. § 7-7-301(b) (1987).[2] No such power has been conferred on boards of election commissioners.

The reasoning of those early cases still applies where boards of election commissioners are concerned. This case well illustrates that the determination of eligibility may often require more than mere ministerial action. Here, the determination of residence requires an exploration of the candidates' intentions and conduct. Ark. Code Ann. § 14-14-1306(c) (1987). The question of whether a candidate is of good moral character likewise cannot be answered without delving into the facts. To allow the board to consider disputed facts, make findings, and act thereon, is to put it in the same posture as a judicial tribunal. The board, being a ministerial entity, simply does not have that power.

██ So, the legal maxim that mandamus cannot control discretion or review findings of fact is no impediment. The board may not exercise discretion or make findings of fact concerning the eligibility of a candidate. That determination may only be made by a court, and the court may then direct the board to either place the candidate's name on the ballot or remove it, as the case may be. The next question to be answered is, by what means may the court direct the board to so act?

---

[2] We do not decide whether this statute would allow a *party committee* to declare a candidate ineligible. Our focus is the power of the Board of Election Commissioners.

■ Mandamus is traditionally regarded as a remedy to be used on all occasions where the law has established no specific remedy, and justice and good government require it. *Ex parte Trapnall*, 6 Ark. 9 (1845). It is a writ which is used to enforce an established right. *Gregg* v. *Hartwick*, 292 Ark. 528, 731 S.W.2d 766 (1987). The right the appellant seeks to enforce is contained in Ark. Code Ann. § 7-5-207(b) (1987). That statute created a right in the people to the proper administration of election laws by prohibiting the inclusion of ineligible candidates on the ballot:

> No person's name shall be printed upon the ballot as a candidate for any public office in this state at any election unless the person is qualified and eligible at the time of filing as a candidate for the office, to hold the public office for which he is a candidate. . . .

■ The only practical method of enforcing this right is the remedy of mandamus. An action in chancery cannot lie because the chancery court has no jurisdiction in matters pertaining to elections. *Curry* v. *Dawson*, 238 Ark. 310, 379 S.W.2d 287 (1964). A writ of prohibition may only be directed to a court or adjudicative committee that is proceeding wholly without jurisdiction; it cannot be directed, as a writ of mandamus can, to a ministerial officer. Ark. Code Ann. § 16-115-101 (1987); *see also Sexton* v. *Supreme Court Comm. on Professional Conduct*, 297 Ark. 154-A, 761 S.W.2d 602 (1988). *Quo warranto* is not appropriate because it is the state that initiates that proceeding, not an individual. Ark. Code Ann. § 25-16-704 (1987); *Cummings* v. *Washington County Election Comm'n, supra; McKenzie* v. *Burris, supra.*

We have implicitly sanctioned the use of mandamus when seeking removal of a candidate's name from the ballot or when requiring a board to place a candidate's name on the ballot. *Cummings* v. *Washington County Election Comm'n, supra; Garner* v. *Holland*, 264 Ark. 536, 572 S.W.2d 589 (1978). *See also Ridgeway* v. *Ray*, 297 Ark. 195, 760 S.W.2d 848 (1988) (Glaze, J., concurring). In *Cummings*, the board placed the name of a Mrs. Linda Oxford on the ballot as a candidate for the county school board, even though she was admittedly not a resident of the school district. Citizens of the district filed a petition for a writ of mandamus commanding the board to remove the candidate's

name from the ballot. Mrs. Oxford intervened in the action. We held that mandamus was appropriate.

While it has its favorable features, mandamus is not a perfect remedy for this type of action. But more than any other remedy, it provides for prompt consideration of the matter, which is often important in election cases. Petitions for writs of mandamus and prohibition have precedence over other actions and, upon written application, must be heard within seven days. *See* Ark. Code Ann. §§ 16-115-103 and 16-115-104(b) (1987). Yet mandamus does not, as this case demonstrates, provide for the joinder of all affected parties. The trial judge was concerned, as are we, that the candidates in this case were not parties to the action. When a mandamus action is brought in a case such as this, courts will have to see that all necessary parties are joined under ARCP Rule 19. Of course, joinder will not be necessary if the candidates themselves bring the action, or if the candidates intervene, as in *Cummings*.

Additionally, mandamus does not provide the means for the court to make a declaration concerning the candidates' eligibility. So a request must be made for declaratory relief in addition to mandamus. Even though the mandamus remedy is combined with a request for declaratory relief, that action will still be considered essentially one of mandamus and must be heard within seven days.

We declare that an action for mandamus and declaratory relief is the proper method of enforcing the right set out in Ark. Code Ann. § 7-5-207(b) which prohibits the inclusion of an ineligible candidate on an election ballot.

Finally, we address the trial court's imposition of ARCP Rule 11 sanctions. Sanctions should not have been imposed in this case. By signing a pleading, motion or other paper, a party or attorney warrants that to the best of his knowledge, information and belief, formed after a reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, and that it is not interposed for any improper purpose, such as harassment or unnecessary delay. The party asking for Rule 11 sanctions has the burden of proving a violation of the rule. *Miles v. Southern*, 297 Ark. 274, 760 S.W.2d 868

(1988).

The appellant essentially brought the proper action and did not abuse the mandamus remedy as contended by the appellee. Her action, while not entirely correct, was warranted by existing law. We find no evidence of bad faith or harassment. Therefore, the order imposing sanctions is reversed.

Because the controversy is moot in this case, we make no ruling on the candidates' eligibility. We do find the trial court erred in deciding that mandamus was an improper remedy. However, since the candidates were not made parties to the appellant's action, and since she failed to ask for declaratory relief, her action was not entirely proper. For that reason, we affirm in part and reverse in part.

Affirmed in part, reversed in part.