Dan IVY, Republican Candidate for Attorney General
for the State of Arkansas *v.* REPUBLICAN PARTY
of Arkansas; Asa Hutchinson, in his Capacity as
Chairman of the Republican Party of Arkansas;
Marty Ryalls, Executive Secretary for the Republican Party of
Arkansas; and the Secretary of State for the State of Arkansas

94-1006                                        883 S.W.2d 805

Supreme Court of Arkansas
Opinion delivered September 23, 1994

*Erwin L. Davis*, for petitioner.

*Gean, Gean, & Gean*, by: *Thomas C. Gear*, for respondents.

PER CURIAM. The pertinent facts appear undisputed. Dan Ivy duly filed with the State Republican Party as a candidate to be that party's nominee for Attorney General. He ran unopposed at the Republican Party Primary elections and, under Ark. Code Ann. § 7-7-304(c), he was entitled to be certified as the Republican Party nominee for the office of Attorney General. *See also* Ark. Code Ann. § § 7-7-203(k)(1) and 7-7-403 (Repl. 1993).

After the primary elections, Mr. Ivy apparently was arrested for the criminal offense of battery in the third degree and was determined guilty by the Fayetteville Municipal Court on September 7, 1994. He appealed. On September 10, 1994, the State Republican Convention convened, and at that convention the membership voted not to certify Ivy as its nominee for Attorney General. On September 12, 1994, Ivy promptly filed a petition for writ of mandamus, in the Pulaski County Circuit Court, naming the Republican Party of Arkansas and its Chairman and Exec-

utive Secretary, and, among other things, requested the court to issue its writ and declaratory judgment directing the Republican Party officials to certify Ivy as the party's nominee for Attorney General. On September 19, 1994, the circuit court denied Ivy's request.

In reaching its ruling, the trial court construed Ark. Code Ann. § 7-1-104(4) which defines "vacancy in nomination" as the following:

> "Vacancy in nomination" means the circumstances in which the nominee of a political party selected at a primary election *shall not* be certified as the nominee due to death, resignation, withdrawal, or *other good and legal cause* arising subsequent to nomination and preceding the final date for certification of nominations (emphasis added).

The lower court also cited Ark. Code Ann. § 7-3-101 (Repl. 1993) as providing that organized political parties shall have the right to prescribe the qualifications of their own membership and for voting and they can establish rules and procedures for their own organization. The court concluded that, under § 7-1-104(4), the General Assembly recognized that a vacancy in nomination might occur for "other good and legal cause," and further concluded Ivy had been found guilty of battery in the third degree, a misdemeanor, and the Republican Convention could appropriately withdraw Ivy's nomination.

■ Arkansas law is well-settled that the party chairman and secretary do not have the judicial authority to determine that a candidate is ineligible to hold public office, nor can they refuse to place the candidate's name upon the ballot. *Ridgeway* v. *Catlett, Chairman*, 238 Ark. 323, 379 S.W.2d 277 (1964); *Irby* v. *Barrett*, 204 Ark. 682, 163 S.W.2d 512 (1942). In *Ridgeway*, E. T. Ridgeway qualified as a candidate for the nomination for the office of Governor in the Democratic Primary. The Democratic Committee learned Ridgeway had been convicted of a felony and notified him that his name would not appear on the ballot. Ridgeway filed suit for a writ of mandamus to compel the party officials to perform the ministerial duty of certifying his name for inclusion on the ballot. The trial court denied Ridgeway relief, but this court reversed.

In reversing, the *Ridgeway* court conceded that Ridgeway was ineligible to hold public office under the Arkansas Constitution. Nonetheless, the court held the procedure followed by the Democratic Party officials was improper in preventing his candidacy. The *Ridgeway* court relied in part upon the earlier holding in *Irby* which concluded *the party chairman and secretary do not have the judicial authority to determine that a candidate is ineligible* to hold office and for that reason to refuse to place the candidate's name on the ballot. (Our emphasis.)

The *Ridgeway* court quoted from the *Irby* decision as follows:

> *If the chairman and secretary of the committee have the right to say that because of the decision of this court petitioner is ineligible to be a candidate for office, they may also say, in any case, that for some other reason a candidate is ineligible.* For instance, it has been held by this court in many election contests that one must pay his poll tax; that he must do so after proper assessment in the time and manner required by law, and that otherwise he is not eligible even to vote, and unless he were a voter he could not hold office. So with other qualifications, such as residence. *May this question be considered or decided by the chairman and secretary of the committee? It may be that such power can be conferred upon them by laws of this state or the rules of the party; but it is certain that this has not yet been done. If this can be done, and should be done, the door would be opened wide for corrupt and partisan action.* It might be certified that a prospective candidate has sufficiently complied with the laws of the state and the rules of a political party to become a candidate, and, upon further consideration, that holding might be recalled; and this might be done before that action could be reviewed in a court of competent jurisdiction and reversed in time for the candidate to have his name placed on the ticket. It would afford small satisfaction if, after the ticket had been printed with the name of the candidate omitted, he have a holding by the court that the name should not have been omitted. (Emphasis added.)

The *Ridgeway* court cited other compelling language, quot-

ing from a Kentucky decision, *Young* v. *Beckham*, 115 Ky. 246, 72 S.W. 1092, as follows:

> If the committee can say who is not eligible to be nominated as party's candidate for office, they can, on the very last day before the ballots are printed, refuse to allow a person's name to go on the ballot upon the pretext that he is ineligible, and thus prevent his name from appearing upon the official ballot. They could thus destroy one's prospect to be nominated, for the rules of procedure in courts are necessarily such that no adequate relief could be afforded the party complaining, if at all, until after the primary election had been held. *If the committee or governing authority has the authority to decide the question as to who is eligible to hold an office or be a candidate before a primary election, then they would have a discretion and judgment to exercise that could not be exercised by a mandamus.* The most that could be done by such a writ would be to compel them to act upon the question. (Emphasis added.)

In our more recent case of *State* v. *Craighead County Bd. of Election Comm'rs*, 300 Ark. 405, 779 S.W.2d 169 (1989), we reviewed the earlier *Ridgeway* and *Irby* decisions and fully recognized the dangers posed by permitting party committees the discretion to determine if a candidate's name should go on the ballot. This court declared that an action for mandamus and declaratory relief is the proper method of enforcing the right set out in Ark. Code Ann. § 7-5-207(b) which specifically prohibits the inclusion of an ineligible candidate on an election ballot.[1]

The foregoing decisions and underlying rationale

---

[1]Section 7-5-207 (b) reads as follows:

(b) No person's name shall be printed upon the ballot as a candidate for any public office in this state at any election unless the person is qualified and eligible at the time of filing as a candidate for the office to hold the public office for which he is a candidate, except if a person is not qualified to hold the office at the time of filing because of age alone, the name of the person shall be printed on the ballot as a candidate for the office if the person will qualify to hold the office at the time prescribed by law for taking office.

apply to the situation before us now. The General Assembly has provided no procedure for state and county party committees or conventions to make a judicial determination concerning whether a party nominee should be certified. To do so in the case here means the party officials would investigate, make factual determinations and determine whether those factual findings constitute "other good and legal cause" under § 7-1-101(4). Such undertaking requires a judicial tribunal, not a political one. Besides, to reiterate, § 7-1-101(4) only defines the term "vacancy in nomination" — it in no way empowered political committees with a procedure to cause or create a vacancy. Here, the lower court incorrectly deferred to the state party convention's actions and discretion, exercised under § 7-1-101(4), in permitting the convention to decide Ivy was ineligible. In conclusion, we mention the trial court's reliance on the cases of *Tashjian* v. *Republican Party of Connecticut*, 479 U.S. 208 (1986), and *Duke* v. *Cleland*, 954 F.2d 1526 (11th Cir. 1992). The trial court cited these two cases as ones that addressed the First Amendment right of association and the proposition that a political party has a right to identify with and select those candidates that best reflect political party preferences. The lower court concluded that the General Assembly intended to follow this right of association proposition when it passed the "vacancy in nomination" provision set forth in § 7-1-101(4), thereby allowing a party to vote not to certify a party nominee for "good and legal cause."

While we agree with the federal decisions cited and the First Amendment tenets expressed in those holdings, we disagree they are applicable here.[2] Under Arkansas's election laws, a political party can remove a nominee for good and legal cause, but the party is merely required to petition the circuit court in so

---

[2]Other distinguishing points can be made concerning the two federal cases cited. For example, the *Tashjian* holding involved the fundamental right to vote and a state law prohibited the Connecticut Republican Party by party rule from allowing independent voters to vote in its primaries. In the case here, no party rule is in conflict with statutory law. The *Duke* case, on the other hand, upheld the right of the Republican members of the Georgia Presidential Candidate Selection Committee to exclude Duke's name from the ballot. There, however, Georgia's state law plainly allowed the party's committee members to agree to delete a candidate's name from the ballot. As discussed in the body of our opinion here, Arkansas's statutory law is quite different.

doing. We set out the reasons for such a procedure in the *Craighead County* case mentioned above. Because the reason (good and legal cause) for vacating a nomination is defined by state law, it is compelling that a judicial, rather than a political, determination be made as to whether the facts correctly invoke § 7-1-104(4) and its definitional standard. The primary difference between these federal cases, however, is that the Republican Party is not deprived of its right of association since state law provides a means to exercise that right.

For the reasons above, we hold the trial court was in error, and should enter a writ of mandamus forthwith compelling the respondents to certify Dan Ivy the party's nominee for the November 8, 1994 General Election.[3]

Writ granted.

DONALD L. CORBIN, Justice, dissenting. I dissent.

The majority's plenary determination is founded on the principle that if a nominee of any political party satisfies the basic constitutional and statutory requirements to the elective office sought, the party cannot refuse to accept an individual as a party nominee for an elective office. I strongly disagree.

A party should have the means to either accept or reject an office seeker. A political party should be entitled to adopt and enforce standards for its office seekers that do not conflict with the constitutional and statutory qualifications for office holding. A party should be able to set such standards that promote the party's ideologies and preferences, not to mention the need to safeguard the integrity of its other office seekers. In fact, the United States Supreme Court has held that parties do have such rights. *Democratic Party of United States* v. *Wisconsin*, 450 U.S. 107 (1981). The Supreme Court has held that the First Amendment guarantees a political party's right of association, which includes the right to identify its membership qualifications and the right

---

[3]We note that, in their motion to dismiss below, respondents alleged that Ivy failed to join the secretary of the Republican Party as a party in this matter. This point seemed to fade at the hearing, and the trial court did not mention the issue in its order. Nor is it pursued on appeal since respondents fail to mention the point in their responsive briefs or cite any authority to support the point. Thus, we do not address it in this per curiam decision.

to select candidates who best represent the party's ideologies. *Id.*

When a person seeks the nomination for a political office as a member of a particular party, he or she has to assume that he or she will be subjected to the discipline of the party from which he desires support. I see the actions of the Republican Party of Arkansas as being a discretionary act designed to promote the ideologies and preferences of its adherents. If one does not wish to adhere to the discipline of the party, he or she is free to seek office under the auspices of another party or as an independent. The party owes its membership and the other party nominees the duty to reject an individual who fails to meet the party's highest standards for designation as a party nominee.

Our General Assembly has enacted a statute expressly providing that organized political parties in this state shall have the right to prescribe the qualifications of their own membership; prescribe the qualifications for voting in their party primaries; and establish rules and procedures for their own organization. Ark. Code Ann. § 7-3-101 (Repl. 1993). The trial court concluded that, pursuant to this statute, the Republican Party of Arkansas set forth a set of rules governing party membership and authority; Article I, Section 1(B) of those rules provide that:

> The final authority in all party matters shall rest in the biennial Republican State Convention, which shall be deemed to have delegated such interim authority to the State Committee and Executive Committee as is necessary to carry out the purposes and objectives of the party.

In 1969, the Arkansas General Assembly passed Act 465. Article I of Act 465 addressed nominations and primary elections. This section, now codified at Ark. Code Ann. § 7-1-101(4) (Repl. 1993), provides that:

> "Vacancy in nomination" means the circumstances in which the nominee of a political party selected at a primary election *shall not* be certified as the nominee due to death, resignation, withdrawal, or *other good and legal cause* arising subsequent to nomination and preceding the final date for certification of nominations[.] [Emphasis added.]

It is clear that when the legislature passed this statute, it used the "vacancy in nomination" language to allow a political party not to certify a candidate for good and legal cause.

A number of federal cases have addressed the issue of a political party's right not to certify candidates in terms of the party's First Amendment right of association. In *Duke* v. *Cleland*, 954 F.2d 1526 (11th Cir. 1992), the Court of Appeals held that Republican members of the Georgia Presidential Candidate Selection Committee did not infringe on the candidate's right of association by excluding his name from the ballots. In denying David Duke's request for a preliminary injunction, the Court of Appeals concluded that "the Republican Party enjoys a constitutionally protected freedom which includes the right to identify the people who constitute this association that was formed for the purpose of advancing shared beliefs and to limit the association to those people only." *Id.* at 1530 (citing *Democratic Party of United States* v. *Wisconsin*, 450 U.S. 107 (1981)). The Court of Appeals also made clear a proposition stated by the United States Supreme Court — that a political party has a First Amendment right to "select a standard bearer who best represents the party's ideologies and preferences." *Duke*, 954 F.2d at 1531.

In *Tashjian* v. *Republican Party of Connecticut*, 479 U.S. 208 (1986), cited in *Duke*, 954 F.2d 1526, a state statute required voters in any party primary to be registered members of that party. The Republican Party challenged this provision on the ground that it burdened the party's First Amendment right to enter into political association with individuals of its own choosing. The Supreme Court, in ruling for the party, reasoned that a "nonmember's desire to participate in the party's affairs is overborne by the countervailing and legitimate right of the party to determine its own membership qualifications." *Tashjian*, 479 U.S. at 215 n.6.

The recent federal decisions addressing the First Amendment right of association stand for the proposition that a political party has a right to identify with and select those candidates that best reflect the party preferences. Although this court has not specifically addressed the issue of whether a state political party may prevent a person from becoming a candidate for office since the passage of Act 465 in 1969, it appears that the Arkansas

General Assembly intended to follow this proposition when it passed the "vacancy in nomination" provision set forth in section 7-1-101(4) allowing a party to vote not to certify someone for "good and legal cause."

I see good cause for the Republican Party to refuse to declare Petitioner as the Republican Party nominee to the Office of Attorney General. The Office of Attorney General is the chief legal officer in the state charged with enforcement of the state's laws. Certainly, the fact that Petitioner has been convicted in municipal court, albeit pending appeal, of violating the very laws which the Attorney General is charged with enforcing constitutes "good and legal cause" for not certifying Petitioner.

I would deny the request for a writ of mandamus.

ROBERT L. BROWN, Justice., dissenting. I would deny the petition.

The narrow issue involved in this case is whether the Republican Party had good and legal cause not to certify the nomination of petitioner Dan Ivy to the Secretary of State because of his misdemeanor conviction for third degree battery involving his wife. The Party claims that the battery conviction constituted such good and legal cause under Ark. Code Ann. §§ 7-1-101(4) and 7-7-104(a) (Repl. 1993). The Pulaski County Circuit Court agreed and denied a previous petition for mandamus on September 19, 1994.

Ivy appears to couch jurisdiction in this court as original jurisdiction under Article 7 of the *Arkansas Constitution* which authorizes this court to issue writs of mandamus and other "remedial writs." The Republican Party responds that jurisdiction only rests as an appeal from Pulaski County Circuit Court. In any event, a writ of mandamus to compel a public entity to act is not appropriate when that entity has the authority to employ discretion in its actions. *Buttolph Trust* v. *Jarnagan*, 302 Ark. 393, 789 S.W.2d 466 (1990); *State* v. *Craighead County Board of Election Commissioners*, 300 Ark. 405, 779 S.W.2d 169 (1989); *Gober* v. *Daniels*, 295 Ark. 199, 748 S.W.2d 29 (1988). Here, the Party did exercise discretion in determining that good and legal cause did exist to deny certification. Counsel for Ivy conceded some discretion in the Party in oral argument when he admitted that a

felony conviction as opposed to a misdemeanor might be appropriate reason for the Party not to certify a nomination. Mandamus is simply not an available remedy in this case.

Ivy also petitions for a declaratory judgment and mandatory injunction. These remedies do not constitute "remedial writs" as contemplated by Article 7 of the Constitution and are not the subject for original jurisdiction in this court. But even viewing the matter as an appeal from the order of the Pulaski County Circuit Court (which did not have a prayer for these remedies before it), I would agree with the court that good and legal cause exists to deny certification. The standard definition of "good cause" is a "substantial reason" for doing something. *Black's Law Dictionary*, p. 692 (6th Ed. 1990). I cannot say under these facts that the Republican Party did not have substantial reason to deny Ivy's certification. A battery conviction for beating one's spouse, albeit at the municipal court level, is serious business when the position at issue is the chief law enforcement officer of the state. It is true that the conviction may be reversed by a jury on appeal, but at this point that is a matter for speculation.

The majority cites two cases for the proposition that political parties cannot refuse to certify candidates for good and legal cause. *Ridgeway* v. *Catlett, Chairman*, 238 Ark. 323, 379 S.W.2d 277 (1964); *Irby* v. *Barrett*, 204 Ark. 682, 163 S.W.2d 512 (1942). Both cases were decided before Act 465 of 1969 which enables political parties to do exactly that. Ark. Code Ann. §§ 7-1-101(4) and 7-7-104(a) (Repl. 1993). The cases, therefore, are not controlling.

The Republican Party refused to certify Ivy's nomination for Attorney General for good and legal cause. A review of that decision was precipitated by Ivy in Pulaski County Circuit Court, and that court rendered a judicial determination and, in effect, found no basis to compel the Party to do otherwise. I see nothing in the controlling statutes that would force the political parties to seek a judicial determination of good and legal cause before acting, as the majority suggests. In sum, there is no constitutional basis for us to take original jurisdiction of this matter and issue a writ of mandamus because the decision not to certify involved discretion on the Party's part. But even if this case were appropriately before us as an appeal, I detect no sound reason to decide the case differently from the circuit court.

DAVID NEWBERN, Justice, dissenting. Mr. Ivy's petition for mandamus, injunction, and declaratory relief was filed with this Court yesterday, September 22, 1994. Late yesterday afternoon a response was filed. This morning, September 23, 1994, we heard oral arguments on the issues presented in those pleadings. The issues are significant. This afternoon this Court issued its decision.

The definiteness and quality of the opinions issued may belie my position, but I cannot believe we have acted so rapidly. The pleadings deserved to be given very serious consideration. Sometimes we have the good judgment not to agree to hear matters in which the parties seek an expeditious result which requires us to go too fast. *See, e.g., Westark Christian Action Council* v. *Stodola*, 311 Ark. 449, 843 S.W.2d 318 (1993).

While I express no opinion on the merits of the petition or response, I must respectfully dissent from the action of the Court which I regard as precipitous.