The Honorable John E. Brown State Senator 17900 Ridgeway Drive Siloam Springs, Arkansas 72761-8866
Dear Senator Brown:
This is in response to your request for an opinion on whether Judge Jay Finch, who was appointed by the Governor in 1996 to fill an unexpired term as circuit chancery judge of the Third Division of the Nineteenth Judicial District, is eligible to be elected to the newly created circuit chancery judgeship in the "Nineteenth Judicial District-West."
In my opinion the law of Arkansas is undeveloped on this question, and a judicial action will be necessary to resolve the matter.
Some explanation is necessary. Currently, the "Nineteenth Judicial District" is composed of Benton and Carroll Counties and is served by two circuit judges, two chancellors and one judgeship designated as "circuit/chancery judge. This last cited judge serves as judge of the juvenile division, and it is my understanding that this judge serves as the judge of the Nineteenth Judicial District, "Division Three." See
A.C.A. § 16-13-2703(a)(1) and (b); (a)(2) and (c); (a)(3) and (e)(1) (1987).
Legislation passed in the 1997 regular session of the Arkansas General Assembly will change the composition of the district beginning January 1, 1999. Act 797 of 1997 divides the existing Nineteenth Judicial District into two separate districts: 1) the Nineteenth Judicial District-West, composed of Benton County; and 2) the Nineteenth Judicial-East, composed of Carroll County. The pertinent legislation will be set out below in detail, but it should be noted that the net effect of the legislation on the existing judgeships is to add one additional circuit/chancery judgeship. There will, beginning January 1, 1999, be one circuit/chancery judge who sits in the Nineteenth Judicial District-East (in Carroll County), and there will be two circuit judges, two chancellors, and one circuit-chancery judge (the same number and composition as currently sit in the "Nineteenth Judicial District"), who will sit in the Nineteenth Judicial District-West. The language of the pertinent 1997 legislation, set out below, is somewhat confusing, but according to my understanding, and according to the facts as stated in your request, "[t]he Circuit-Chancery Judge of Division Three was assigned to the eastern division and a new Circuit-Chancery Judge position was created in the western division." (Letter from Sen. John E. Brown of March 12, 1998 to Attorney General Winston Bryant). The pertinent legislation, codified at A.C.A. § 16-13-3002 provides as follows:
 (a) As of January 1, 1999, the Circuit-Chancery Judge of the Nineteenth Judicial District, who sits as judge of the juvenile division and Division Three of the circuit and chancery courts, is hereby designated as the Circuit-Chancery Judge of the Nineteenth Judicial District-East and shall sit as the judge of the circuit, chancery and probate courts and the juvenile division.
 (b) At the 1998 General Election, the qualified electors of the Nineteenth Judicial District-East shall elect the circuit-chancery judge to take office on January 1, 1999.
 (c) As of January 1, 1999, the Nineteenth Judicial District-West shall be served by one (1) Circuit Judge of the First Division; one (1) Circuit Judge of the Second Division; one (1) Chancery Judge of the First Division; one (1) Chancery Judge of the Second Division; and an additional circuit-chancery judge who shall perform the duties of the judge of the juvenile division and sit as judge of the circuit, chancery or probate court as time permits. The additional circuit-chancery judge shall be elected in 1998 to take office on January 1, 1999.
 (d) As of the 1998 general election, the circuit, chancery, and circuit-chancery judges of the Nineteenth Judicial District-West shall hereafter be elected by qualified electors of the Nineteenth Judicial District-West. The current chancery judges shall serve the balance of their terms in the Nineteenth Judicial District-West.
 (e) There shall be provided for the judge of the circuit-chancery judgeship created by this section a court reporter and a trial court administrative assistant whose salaries shall be fixed and paid in the manner provided by law for court reporters and trial court administrative assistants of the circuit and chancery courts of this state.
 (f) All existing laws not in conflict herewith pertaining to the Nineteenth Judicial District shall apply to the Nineteenth Judicial District-East and the Nineteenth Judicial District-West.
 (g) The judges of the Nineteenth Judicial District-East and the Nineteenth Judicial District-West may, by agreement, temporarily exchange districts or hold court for each other as they deem necessary or appropriate.
It is my understanding that the intent of this section is to move the pre-existing circuit/chancery judgeship in the Nineteenth Judicial District to the new Nineteenth Judicial District-East, and to create a new circuit/chancery judgeship in the Nineteenth Judicial District-West. One might question why the net effect of this legislation (one additional circuit/chancery judge) was accomplished by such a circuitous route. More will be said about that later in this opinion.
Your question, in light of this legislation, is whether the current gubernatorial appointee, Judge Jay Finch, is eligible to run for the new circuit/chancery judgeship in the Nineteenth Judicial District-West, in light of the fact that he was appointed under the provisions of Arkansas Constitution Amendment 29. That provision states in pertinent part that:
 Section 1. Vacancies in the office of United States Senator, and in all elective state, district, circuit, county, and township offices except those of Lieutenant Governor, Member of the General Assembly and Representative in the Congress of the United States, shall be filled by appointment by the Governor.
 Section 2. . . . No person appointed under Section 1 shall be eligible for appointment or election to succeed himself.
It is clear, in my opinion, that Amendment 29 is triggered by Judge Finch's service. That is, the position of circuit-chancery judge is one covered by the provisions of Amendment 29. See State v. Green Rock,206 Ark. 361, 175 S.W.2d 575 (1943). A person appointed to a circuit-chancery judgeship by the Governor to fill a vacancy may not "succeed himself." Your question is whether, in running for the newly created position in the Nineteenth Judicial District-West, Judge Finch would be attempting to "succeed himself."
I must note as an initial matter that the question you have presented may, as a practical matter, have to be resolved by the judicial branch. If Judge Finch properly files for the position and meets all of the filing requirements, in my opinion the County Board of Election Commissioners does not have the authority to declare him ineligible or to remove his name from the ballot. It has been stated that such boards' actions are ministerial only, and that they "[do] not have the authority to declare a candidate ineligible and remove his name from the ballot when there is a dispute concerning the facts or the law." State v.Craighead County Board of Election Commissioners, 300 Ark. 405,779 S.W.2d 169 (1989). See also Ivy v. Republican Party, 318 Ark. 50,883 S.W.2d (1994) (political party chairman and secretary do not have the authority to declare a party nominee ineligible and thereby create a "vacancy in nomination.") The court in Craighead County, supra, concluded that mandamus coupled with a declaratory judgment is the proper legal proceeding to challenge a candidate's eligibility and seek removal of the candidate from the ballot. 300 Ark. at 412. The court reasoned that:
 . . . the determination of eligibility may often require more than mere ministerial action. . . . To allow the board to consider disputed facts, make findings, and act thereon, is to put it in the same posture as a judicial tribunal. The board, being a ministerial entity, simply does not have that power. . . . The board may not exercise discretion or make findings of fact concerning the eligibility of a candidate. That determination may only be made by a court, and the court may then direct the board to either place the candidate's name on the ballot or remove it, as the case may be.
Id. at 410.
Thus, the county board of election commissioners (who now have the duty to conduct party primaries (A.C.A. § 7-7-201(b)(1)), do not have the power to determine eligibility or remove a candidate's name from the ballot in light of an eligibility challenge. One statute, however, enacted after both the Craighead County and Ivy decisions, is of relevance. Section 7-7-201(b)(2) (Supp. 1997) of the Arkansas Code provides that:
 Each political party shall be responsible for determining the qualifications of candidates seeking nomination by the political party, provide necessary applications for candidacy, accept and process the applications, and determine the order of the ballot. [Emphasis added.]
In addition, a statute predating these cases, A.C.A. § 7-7-301, provides that:
 (b)(1) Before the name of any person shall appear on the primary ballot of a political party as a candidate for any local, state, or federal office, the secretary of the county committee or the secretary of the state committee, as the case may be, of the political party must make an affirmative determination that the person complies with the eligibility requirements of the office.
 (b)(2) The secretary of the county committee or state committee, as the case may be, shall require an affidavit of eligibility from the candidate, and the secretary may make such independent investigation as he deems necessary to determine the eligibility of the candidate to serve in the office he seeks. . . . [Emphasis added.]
These two statutes were not relevant in either the Craighead County orIvy decisions. Neither involved a candidate for a primary election. TheCraighead County case involved eligibility to be on a general election ballot and thus the authority of the county board of election commissioners, and the Ivy case involved a party nominee whose eligibility was called into question after he was selected at the primary. In addition, several earlier cases relied upon in both these decisions, which did involve the eligibility of candidates to be on the primary ballot, pre-dated the statutes. The Craighead County case mentioned these cases as affected by the latter statute, stating:
 Since Irby, Carroll v. Schneider, supra, and Ridgeway v. Catlett, supra were decided, the general assembly has passed a number of new election laws. One of those laws gives the county political party committees the duty to investigate and make an affirmative determination of a candidate's eligibility before placing the candidate's name on the party's primary election ballot [citing A.C.A. § 7-7-301(b)]. No such power has been conferred on boards of election commissioners.
300 Ark. at 410. The court stated in a footnote that it was unnecessary for it to decide whether 7-7-301 would allow a party committee to declare a candidate ineligible. Id. n. 2.[1]
In my opinion these statutes (A.C.A. §§ 7-7-201 and 7-7-301) do, under the circumstances herein, give the political parties some authority to make an eligibility determination of a candidate in the primary, subject of course to judicial review.[2]
I will thus set out the law, or the lack thereof, surrounding the Amendment 29 eligibility question you pose. That question is whether a gubernatorial appointee to a circuit/chancery judgeship may file, run for, and hold the position of circuit/chancery judge where the judicial district to which he was appointed has been split into two new separate districts, and the judgeship to which he was appointed is moved to another district and a new circuit-chancery judgeship, the one he seeks, is created in its place.
It should be pointed out initially that there is no controlling Arkansas case law interpreting Amendment 29, § 2. It is mentioned in only two cases, and in neither is a construction of its requirements necessary to a decision. See McCraw v. Pate, 254 Ark. 357, 494 S.W.2d 94 (1973) andHowell v. Howell, 213 Ark. 298, 208 S.W.2d 22 (1948). We are thus left with no guidance from the Arkansas Supreme Court on the parameters of the provision. Neither has extensive research revealed any helpful cases from other jurisdictions on the point. This being the case, a judicial decision will be necessary to obtain any definitive ruling on the question.
There are, however, several previously issued Attorney General opinions which touch upon the subject. See, e.g., Ops. Att'y Gen. 93-022
(appointed circuit judge not prohibited by Amendment 29, § 2 from running for a different division of the same judicial district, because in so doing, is not succeeding himself, but someone else); 91-379 (appointed quorum court member may run for election to newly apportioned quorum court district, if facts showed that the particular district had changed in terms of geography and people represented); 86-046 (appointed circuit
judge can run for newly created chancery judgeship in same district despite the fact that the judges could have exchanged circuits and tried matters in each other's courts); and 77-189 (appointed chancellor may run for and hold chancellorship in newly created Nineteenth Judicial District, where that district was reformed by taking away Madison County and leaving Benton and Carroll Counties).
The last cited opinion (issued by then Attorney General Bill Clinton), is the most relevant for our purposes. It was stated therein that: "Amendment 29 is an obvious expression of the desire of the people of Arkansas that elective offices shall be held by elected officials. Though it recognizes the necessity to temporarily fill a vacancy when one occurs through unforeseen circumstances, it also recognizes the right of the people to choose, by election, the person they desire to assume the duties of the office." Id. at 3. The opinion then states, as regards the succession question, that:
 The question you pose adds a new twist to the problem: is the appointee succeeding himself? Effective January 1, 1979, the 16th Chancery Circuit will no longer exist. There will be a Sixteenth `circuit-chancery court circuit' composed of Fulton, Izard, Stone, Cleburne, and Independence counties, none of which are in the present 16th Chancery Circuit. (Act 432, Section 1(p)). The 16th Chancery Circuit now consists of three counties: Benton, Carroll, and Madison. After January 1, 1979, two of these counties — Benton and Carroll — will constitute the Nineteenth `circuit-chancery court circuit.'
 While it is plain the appointee you contemplate cannot succeed himself, it is equally plain that since the 19th circuit-chancery court circuit will not even exist during his term of office, he would not be, if elected, succeeding himself or anyone else. Because of the very material changes in the makeup of the new 19th circuit-chancery court circuit, it surely could not be argued the designation is all form and no substance.
It is uncertain if the Arkansas Supreme Court would take a view similar to that expressed above. In my opinion, the court will be willing to look at the reasons for the Amendment 29, § 2 prohibition, the evil sought to be remedied, and to apply its provisions in light of that intention. The people's preference for filling offices by election, rather than appointment, has been noted by the Arkansas Supreme Court. See, e.g.,Means v. Terral, 145 Ark. 443, 225 S.W. 601 (1920). Amendment 29 provides for the temporary filling of vacancies by gubernatorial appointment only until such time as a general election can be held. Amendment 29, §§ 1 and 4. The prohibition contained in section 2 against an appointee succeeding himself, however, must contain an added intention, as it would not be violative of the policy expressed in sections 1 or 4 for an appointee to hold the office if duly elected at a succeeding election by the people. In my opinion, the intention of Amendment 29, § 2 is to prohibit the appointee from gaining the unequal advantage of incumbency as against those who would seek election to the office. In my opinion, under the circumstances you describe, the Arkansas Supreme Court would evaluate this potential advantage in light of the actual changes made in the geography and constituency served by the new district. In some cases these changes may indeed be "all form and no substance." In others, material changes in representation may lessen or obviate any such advantage. This is ultimately a question of fact for a court of competent jurisdiction.
Where the appointee seeks election to a different judgeship, as in the case of an appointed circuit judge running for election to a different division of the same district (see, e.g., Op. Att'y Gen. 93-022), it may be argued that the action does not even fall with the plain language of the Amendment 29, § 2 prohibition. That person is not attempting to "succeed himself but someone else." Op. Att'y Gen. 91-379. If the drafters of Amendment 29 had intended to bar the appointee from running for any similar office after the term of the appointment, they could have easily so stated. Where, however, the boundaries of the district have merely changed somewhat around the existing position, the Arkansas Supreme Court will, in my opinion, evaluate the materiality of the changes made to the district and the potential for the advantage Amendment 29, § 2 seeks to prohibit. In my opinion, the language employed in Act 797 to designate the Nineteenth Judicial District — West circuit-chancery judgeship as a "new" position would not be viewed by the Arkansas Supreme Court as placing this judgeship in the former category. Thus, in my opinion, a factual review of the composition of the district will be required.
In conclusion, the answer to the question you have posed is unclear under Arkansas law, requires an analysis of facts, and a judicial action will ultimately be necessary to resolve it.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh
[1] The Ivy court appears to readopt prior case law to the effect that a party chairman and secretary have no authority to declare a candidate ineligible or to keep his name from appearing on the ballot. The court, in so doing, did not mention the possible impact of A.C.A. § 7-7-301 on the earlier cases. It was unnecessary to do so, as the facts in Ivy did not involve a candidate for a primary election, but, rather, a party nominee who sought inclusion on the general election ballot.
[2] The constitutionality of these statutes has not been challenged, and they are, of course, presumed constitutional.