The Honorable Russ Hunt State Representative P.O. Box 200 Searcy, Arkansas 72146-0200
Dear Representative Hunt:
I am writing in response to your request for an opinion on "whether a judge currently appointed to a circuit/chancery vacancy can run to succeed himself under the new judicial article as a `circuit judge.'"
RESPONSE
It is my opinion that the answer to your question is "no."
I assume that the currently appointed circuit/chancery judge you describe was appointed by the Governor to fill a vacancy under the provisions of Amendment 29 to the Arkansas Constitution. That Amendment authorizes the Governor to fill vacancies in a number of state, district, circuit, county[1] and township offices. Sections 1 and 2 of the Amendment provide as follows:
 Vacancies in the office of United States Senator, and in all elective state, district, circuit, county, and township offices except those of Lieutenant Governor, Member of the General Assembly and Representative in the Congress of the United States, shall be filled by appointment by the Governor.
 The Governor, Lieutenant Governor and Acting Governor shall be ineligible for appointment to fill any vacancies occurring or any office or position created, and resignation shall not remove such ineligibility. Husbands and wives of such offices, and relatives of such officers, or of their husbands and wives within the fourth degree or consanguinity or affinity, shall likewise be ineligible. No person appointed under Section 1 shall be eligible for appointment or election to succeed himself. [Emphasis added.]
It is the last sentence in Section 2 above that gives rise to your question. You refer in your request to the upcoming effectiveness of the "new judicial article." At the November, 2000 general election, the voters of the state adopted a constitutional amendment, now numbered as "Amendment 80," the purpose of which was to revise the "judicial article" (Article 7) of the Arkansas Constitution. The provisions of the new amendment outline the make-up of the judicial branch of government as including the Supreme Court, Court of Appeals, Circuit Courts and District Courts. Circuit/Chancery judgeships, such as the one you mention, or chancery judgeships in general, are not a part of the newly constituted article. These judges will, after the effective date of amendment 80 (July 1, 2001), become "circuit judges." See also, Act 951 of 2001 (re-designating, effective July 1, 2001, each of the present circuit, circuit-chancery and chancery judgeships throughout the state as "circuit court[s]" with division numbers for election purposes). Your question is whether the transformation of a circuit-chancery judgeship into a circuit judgeship after the effective date of Amendment 80, standing alone, somehow obviates the prohibition contained in Amendment 29, § 2 against a gubernatorial appointee "succeed[ing] himself" when that judgeship comes up for election.[2] The argument is that by running as a candidate for the newly constituted "circuit" judgeship, the judge would not be "succeeding himself," but running for a new and distinct office from the one to which he was appointed. The question is whether this is permissible in light of Amendment 29, § 2. Again, it is my opinion that the answer to this question is "no."
The relevant provisions of Amendment 80 do not directly address the issue, but in my opinion, are instructive. The relevant portions of Amendment 80 include Sections 6, 17, 19 and 22. Section 6 of the Amendment, with regard to Circuit Courts, provides in pertinent part as follows:
 Circuit Courts. (A) Circuit Courts are established as the trial courts of original jurisdiction of all justiciable matters not otherwise assigned pursuant to this Constitution.
Section 17 of Amendment 80 addresses the filling of vacancies in circuit and district judgeships. It states:
 (A) Circuit Judges and District Judges shall be elected on a non-partisan basis by a majority of qualified electors voting for such office within the circuit or district which they serve.
 (B) Vacancies in these offices shall be filled as provided by this Constitution.
The only applicable provision for filling these vacancies, after the effective date of Amendment 80, is Amendment 29, with its attendant restrictions. See also Act 1693 of 2001, § 2 (as to the filling of vacancies in district judgeships).
Section 19 of Amendment 80 is entitled "Transition provisions, tenure of present justices and judges, and jurisdiction of present courts." Subsection (A)(2) of this Section provides as follows:
 All Circuit, Chancery, and Circuit-Chancery Judges in office at the time this Amendment takes effect shall continue in office as Circuit Judges until the end of the terms for which they were elected or appointed; provided further, the respective jurisdictional responsibilities for matters legal, equitable or juveniles in nature as presently exercised by such Judges shall continue until changed pursuant to law.
Section 19, subsection (C), perhaps most importantly, provides in pertinent part that:
 The Circuit Courts shall be regarded as a continuation of the Circuit, Chancery, Probate and Juvenile Courts now existing.
Finally, Section 22 of Amendment 80, the repealer clause, states in subsection (G), that:
 No other provision of the Constitution of the State of Arkansas shall be repealed by this Amendment unless the provision is in irreconcilable conflict with the provisions of this Amendment.
It is clear, in my opinion, from a reading of these provisions, that the drafters of Amendment 80 envisioned the newly dubbed "circuit judgeships" as a continuation of the pre-existing circuit and chancery courts. See
Amendment 80, § 19(C). The existing judges, even the appointed ones, are to continue in office for the terms for which they were appointed.
Amendment 80, § 19(A)(2). It is also clear, in my opinion, that the drafters envisioned the continued applicability of Amendment 29 to the filling of vacancies in circuit judgeships. See Amendment 80, § 17(B). There was certainly no intention to repeal the prohibition in Amendment 29 § 2 against appointees succeeding themselves. See Amendment 80, § 22(G). Persons appointed to fill vacancies in these offices have been prohibited from succeeding themselves in office since the adoption of Amendment 29 in 1938 and appointed circuit judges will continue, under our Constitution, to be ineligible to succeed themselves under Amendment 29 in years to come. The question is whether, at the first election after the passage of Amendment 80 at which a currently appointed circuit-chancery judge comes up for election, Section 2 of the Amendment does not apply, because the appointee is not strictly "succeeding himself," but running for a distinct office.
Two of my predecessors have issued opinions in analogous contexts. In Opinion 98-076, legislation was passed to move a then-existing (and appointee-occupied) 19th Judicial District circuit-chancery judgeship to a newly created 19th Judicial District-"East" judgeship (in Carroll County). The legislation also created a new circuit-chancery judgeship in the new Nineteenth Judicial District-"West" (Benton County) in the place of the judgeship that was "moved." The former 19th Judicial District was comprised of both counties. The question was whether the appointee who served in the judgeship to be "moved," could seek election to the new circuit-chancery judgeship that was created in its place. In response, my predecessor discussed the reasons and intention of Amendment 29, § 2 as follows:
 In my opinion, the court will be willing to look at the reasons for the Amendment 29, § 2 prohibition, the evil sought to be remedied, and to apply its provisions in light of that intention. The people's preference for filling offices by election, rather than appointment, has been noted by the Arkansas Supreme Court. See, e.g., Means v. Terral, 145 Ark. 443, 225 S.W. 601 (1920). Amendment 29 provides for the temporary filling of vacancies by gubernatorial appointment only until such time as a general election can be held. Amendment 29, §§ 1 and 4. The prohibition contained in section 2 against an appointee succeeding himself, however, must contain an added intention, as it would not be violative of the policy expressed in sections 1 or 4 for an appointee to hold the office if duly elected at a succeeding election by the people. In my opinion, the intention of Amendment 29, § 2 is to prohibit the appointee from gaining the unequal advantage of incumbency as against those who would seek election to the office. In my opinion, under the circumstances you describe, the Arkansas Supreme Court would evaluate this potential advantage in light of the actual changes made in the geography and constituency served by the new district. In some cases these changes may indeed be "all form and no substance." [Referring to Op. Att'y Gen. 77-189.] In others, material changes in representation may lessen or obviate any such advantage. This is ultimately a question of fact for a court of competent jurisdiction.
 Where the appointee seeks election to a different judgeship, as in the case of an appointed circuit judge running for election to a different division of the same district (see, e.g., Op. Att'y Gen. 93-022), it may be argued that the action does not even fall with the plain language of the Amendment 29, § 2 prohibition. That person is not attempting to "succeed himself but someone else." Op. Att'y Gen. 91-379. . . . Where, however, the boundaries of the district have merely changed somewhat around the existing position, the Arkansas Supreme Court will, in my opinion, evaluate the materiality of the changes made to the district and the potential for the advantage Amendment 29, § 2 seeks to prohibit. In my opinion, the language employed in Act 797 to designate the Nineteenth Judicial District-West circuit-chancery judgeship as a "new" position would not be viewed by the Arkansas Supreme Court as placing this judgeship in the former category.
Opinion 98-076 at 9-10. (Emphasis added). See also Ops. Att'y Gen. 77-189 (chancellor appointed to fill vacancy in one district not prohibited from seeking office in newly created judicial district composed of two of the three counties from former district, because of "material changes" in the make-up of the district); 91-447 (appointed member of the quorum court may seek election to a district which is, in fact, a new one due to changes in geographic parameters, constituents, and the district number, because he would not thereby be "succeeding himself," but noting that there may be close questions in particular instances concerning whether a "new" district actually exists, or whether the old one has only been modified slightly); 91-379 (quorum court members could make a convincing argument that they were eligible to run for newly created districts because in doing so they were not "succeeding themselves," but success of the argument may depend upon whether in fact a particular district has changed, both in terms of geography and the people it represents).
After a review of all the pertinent provisions of Amendment 29, Amendment 80, and the attendant implementing legislation (see again Act 951 of 2001), it is my opinion that the mere re-designation of circuit-chancery judgeships as "circuit" judgeships for purposes of Amendment 80, without more, does not operate to render the judgeships distinct offices for purposes of the prohibition in Amendment 29, § 2. Although there may be some material changes made in the nature and workload of these judgeships (see. e.g., Arkansas Supreme Court Administrative Order No. 14), in my opinion they are not materially different for purposes of giving effect to the people's intention in adopting Amendment 29, § 2. I agree with the conclusion of my predecessor quoted above, that the intention of the people in enacting § 2 of the amendment was to prohibit the appointee from gaining the unequal advantage of incumbency as against those who would seek election to the office. The changes brought about by Amendment 80 and its implementation, without more, do nothing to alter or obviate this advantage. Where the reason for the rule still exists, in my opinion, the people's intention in adopting Amendment 29 will be given effect. I cannot conclude that the otherwise seamless implementation of the people's intent in enacting Amendment 29, § 2 is to be disrupted as inapplicable to one election cycle by virtue of the changes made by Amendment 80. To conclude otherwise would be to place "form over substance." In my opinion, our Supreme Court would brook no evasion of Amendment 29, § 2 on this type of hyper-technical distinction.
Additionally, the current circuit-chancery judgeships are individually re-designated as "circuit" judgeships by Act 951 of 2001 effective July 1, 2001. The appointee you describe will, by operation of law, become a "circuit" judge on July 1, 2001. To the extent he thereafter files for election for this same circuit judgeship at the next ensuing election, he clearly will be attempting to "succeed himself" as a former "circuit judge." The fact that his circuit-chancery judgeship was re-designated by operation of law, mid-appointment, to a circuit judgeship will not obviate the fact that he was "appointed under Section 1" of Amendment 29 for purposes of applying the prohibition in Amendment 29, § 2.
Finally, I must note that the eligibility of candidates to stand for election is an issue that must ultimately be judicially determined. As discussed in Opinion 98-076, the County Board of Election Commissioners does not have the authority to declare candidates ineligible or to remove their names from the ballot. It has been stated that such boards' actions are ministerial only, and that they "[do] not have the authority to declare a candidate ineligible and remove his name from the ballot when there is a dispute concerning the facts or the law." State v. CraigheadCounty Board of Election Commissioners, 300 Ark. 405, 779 S.W.2d 169
(1989). The court in Craighead County, supra, concluded that mandamus coupled with a declaratory judgment is the proper legal proceeding to challenge a candidate's eligibility and seek removal of the candidate from the ballot. 300 Ark. at 412. See also, Valley v. Bogard,342 Ark. 336, 28 S.W.3d 269 (2000) and Jacobs v. Yates, 342 Ark. 243,27 S.W.3d 734 (2000).
Senior Assistant Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:ECW/cyh
[1] Amendment 55 to the Arkansas Constitution, however, substitutes the quorum court as the appointive authority to fill vacancies in county elected offices. See Hawkins v. Stover, 274 Ark. 125, 622 S.W.2d 668
(1981).
[2] I assume from your question that the appointed circuit-chancery judge at issue would serve the same judicial district and the same citizens of that district as a "circuit judge," if elected, as he did while an appointed "circuit-chancery" judge. I assume further that the circuit-chancery judge in question will have his existing judgeship renamed as a division of circuit court by Act 951 of 2001, effective July 1, 2001.