The Honorable Percy Malone State Senator 518 Clay Street Arkadelphia, AR 71923-6024
Dear Senator Malone:
You have presented the following question for my opinion:
 Does a county election commission have the authority to place on the ballot for a school election those positions on a school board the terms of which have not expired or which otherwise have not been determined by the school board to be submitted to the electors?
RESPONSE
It is my opinion that the county election commission does not have the authority to determine independently which candidates' names are to be placed on the ballot for a school election. I must note that the issue underlying your question appears to be whether all board members in the school district in question are required to run in the upcoming school election, even though some of their terms have not expired. It is my opinion that this issue will turn on certain factual information about the school district in question. I will discuss this issue after answering your express question.
The Authority of the County Election Commission
The duties of the county election commission in connection with the preparation of school elections ballots is set forth at A.C.A. §6-14-111. That statute requires the commission to place on the school election ballot the name of any qualified voter whose name has been filed with and verified by the county clerk. More specifically, the statute states in pertinent part:
 (a) The county board of election commissioners shall prepare and furnish ballots and all other necessary supplies for the annual school election.
 (b)(1) The county board of election commissioners shall place on the ballots as candidates for school district director names of any qualified voters whose names have been filed and verified by the county clerk.
 (2) The county clerk shall certify to the board of election commissioners that the petition contains the names of at least twenty (20) qualified registered voters who are residents of the district and respective electoral zone, if directors are elected from zones, at least forty-five (45) days before the annual school election.
 (3) Candidates shall circulate the petitions no earlier than ninety (90) calendar days before the annual school election.
A.C.A. § 6-14-111(a) and (b) (emphasis added).
The duty imposed by the above quoted statute is unambiguous and is stated in mandatory terms. The principle that the term "shall" indicates mandatory, rather than discretionary, compliance is well established in Arkansas law. See, e.g., Brewer v. Fergus, 348 Ark. 577, 79 S.W.3d 831
(2002). Accordingly, I must conclude that the county election commission must place on the ballot all names that have been duly certified by the county clerk, and may not place on the ballot any names that have not been certified in this manner.
My conclusion is bolstered by the fact that the general elections laws, which are applicable to school elections, see A.C.A. § 6-14-101, contain the following similar provision:
 (a) All election ballots provided by the county board of election commissioners of any county in this state for any election shall contain in the proper place the name of every candidate whose nomination for any office to be filled at that election has been certified to the commissioners and shall not contain the name of any candidate or person who has not been certified.
A.C.A. § 7-5-207.
This provision was central to the Arkansas Supreme Court's decision inState v. Craighead County Bd. of Election Comm'rs, 300 Ark. 405,779 S.W.2d 169 (1989). In that case, a county board of election commissioners had placed on the ballot the names of certain candidates for justice of the peace positions who were alleged to have been ineligible because of questions about their residence and moral character. The plaintiff petitioned the circuit court for writ of mandamus directing the commission to remove the names from the ballot. The circuit court dismissed the petition on the grounds that mandamus could not be used for the purpose of controlling discretion, reviewing findings of fact, or correcting erroneous action. The circuit court reasoned that the board of election commissioners had the power to make factual determinations concerning a candidate's eligibility, and once that determination was made, mandamus could not compel an opposite result.
On appeal, the Arkansas Supreme Court reversed the circuit court's decision, stating: "In fact, the board does not have the authority to declare a candidate ineligible and remove his name from the ballot when there is a dispute concerning the facts or the law." Id. at 410. The court reasoned as follows:
 [T]he determination of eligibility may often require more than mere ministerial action. Here, the determination of residence requires an exploration of the candidates' intentions and conduct. Ark. Code Ann. 14-14-1306(c) (1987). The question of whether a candidate is of good moral character likewise cannot be answered without delving into the facts. To allow the board to consider disputed facts, make findings, and act thereon, is to put it in the same posture as a judicial tribunal. The board, being a ministerial entity, simply does not have that power.
Id.
The court concluded that only a court can determine the eligibility of candidates to run. The right to prohibit ineligible candidates from being placed on the ballot for an election is a right that is established in A.C.A. § 7-5-207 (quoted above), and the proper remedy for the enforcement of that right is a writ of mandamus coupled with a request for a declaratory judgment concerning the candidates' eligibility.Accord, Ivy v. Republican Party, 318 Ark. 50, 883 S.W.2d 805 (1994).
The principles enunciated in Craighead County Bd. of Election Comm'rs
apply to the question you have presented. The county board of election commissioners does not have the authority to determine the eligibility of candidates to be placed on the ballot for a school election. Only a court can determine the eligibility of the candidates. Until such a determination has been made, the commission is required by law to place on the ballot all names that have been duly certified by the county clerk, and to refrain from placing on the ballot any names that have not been certified in this manner.
The Issue of Whether All Board Members Are Required to Run
As noted previously, it appears that the issue underlying your question is whether all of the board members in the school district in question are required to run in the upcoming school election, even though some of their terms have not expired. The answer to this question is not entirely clear under the available precedent, and will, in any event, depend upon certain factual matters about the school district.
The issue is governed by the provisions of A.C.A. § 6-13-631. That statute sets forth certain requirements for school board elections in school districts having a ten percent or greater minority population (as reported by the most recent federal decennial census). The statute states:
 (a) Beginning with the 1994 annual school election, the qualified electors of a school district having a ten percent (10%) or greater minority population out of the total population, as reported by the most recent federal decennial census information, shall elect the members of the board of directors as authorized in this section, utilizing selection procedures in compliance with the federal Voting Rights Act of 1965, as amended.
 (b)(1) At least ninety (90) days before the election, the local board of directors shall:
 (A) By resolution, choose to elect board members from five (5) or seven (7) single-member zones or from five (5) single-member zones and two (2) at large; and
 (B) With the approval of the controlling county board of election commissioners, divide each school district having a ten percent (10%) or greater minority population into five (5) or seven (7) single-member zones in accordance with the federal Voting Rights Act of 1965, as amended.
 (2) Zones shall have substantially equal population, with boundaries based on the most recent available federal decennial census information.
 (c) A board of directors choosing to elect board members by five (5) single-member zones and two (2) at-large positions may fill the two (2) at-large positions by drawing lots from among the current board members.
 (d)(1)(A) A candidate for election from a single-member zone must be a qualified elector and a resident of the zone.
 (B) A candidate for an at-large position must be a qualified elector and a resident of the district.
 (2)(A) Except as provided in subsection (e) of this section, a district board member shall serve a five-year term.
 (B) A term shall commence when the county court declares the results of the election by an order entered of record.
 (e) At the first meeting of a new board of directors, the members shall establish initial terms by lot so that, to the extent possible, an equal number of positions are filled each year and not more than two (2) members' terms expire each year.
 (f)(1) After each federal decennial census and at least ninety (90) days before the annual school election, the local board of directors, with the approval of the controlling county board of election commissioners, shall divide each school district having a ten percent (10%) or greater minority population into single-member zones. The zones shall be based on the most recent federal decennial census information and substantially equal in population.
 (2) At the annual school election following the rezoning, a new school board shall be elected in accordance with procedures set forth in this section.
 (g)(1) The following school districts shall be exempt from the provisions of this section:
 (A) A school district that is currently operating under a federal court order enforcing school desegregation or the federal Voting Rights Act of 1965, as amended;
 (B) A school district that is operating under a preconsolidation agreement that is in compliance with the federal Voting Rights Act of 1965, as amended;
 (C) A school district that has a zoned board meeting the requirements of the federal Voting Rights Act of 1965, as amended; and
 (D) A school district that a federal court has ruled is not in violation of the federal Voting Rights Act of 1965, as amended, so long as the court order is in effect.
 (2) A school district which on August 13, 1993, was in the process of defending a lawsuit brought under the Voting Rights Act of 1965, as amended, shall also be exempt from the provisions of this section until such time as the lawsuit has been finally resolved.
 (3)(A) A school district released from operating under a federal court order enforcing school desegregation shall comply with the provisions of this section.
 (B) The district shall use the most recent federal decennial census information to create zones pursuant to this section within one hundred eighty (180) calendar days after the release from the court order.
 (h)(1) On or before August 1, 2002, and every decade thereafter, each and every school district shall submit to the Department of Education a letter stating whether or not its school board falls under this section. In that same letter, each school district that falls under this section shall state how it has complied with this section. Furthermore, in the same letter, any school district that believes that it is exempt from this section shall state under which provision it is exempt.
 (2) The department shall withhold twenty percent (20%) of the annual state funds allocation to a school district not in compliance with this section.
 (i) The State Board of Education is hereby authorized to adopt rules and regulations necessary for the implementation of this section.
A.C.A. § 6-13-631.
My predecessor in office opined that if a school district is subject to this statute (that is, if the school district has a ten percent or greater minority population and does not fall within any of the exemptions), an entirely new board must be elected; all members must run, even if their terms have not expired.[1] See Ops. Att'y Gen Nos. 2002-194; 2001-176. This interpretation was based primarily upon the language of A.C.A. § 6-13-631(f)(2), above: "At the annual school election following the rezoning, a new school board shall be elected in accordance with procedures set forth in this section."
The Arkansas Supreme Court recently shed some light on the approach it will take in interpreting the provisions of A.C.A. § 6-13-631. In Fieldsv. Marvell School District, 02-1336 (Ark. 4-10-2003), the Marvell School District, which had a minority population in excess of ten percent, hired an expert to study the population information that resulted from the 2000 federal census. On the basis of the expert's recommendations, the district adjusted the boundary between two of its previously existing election zones. The expert's report had indicated that this adjustment was necessitated by population changes that had occurred as a result of the construction of a housing project in one of the zones. After this adjustment was made, five individuals filed for election to unexpired terms on the school board. Only one of the incumbents filed as a candidate, running for the open at-large position. The school district filed a lawsuit seeking a restraining order and arguing that only the at-large position was open for election and that the other positions were not. The five individuals who had filed as candidates argued that they should be allowed to run, because A.C.A. § 6-13-631(f)(2) required that an entirely new board be elected after a rezoning occurs. The circuit court held that the school district was exempt from the requirement of electing an entirely new board, because it met two of the conditions for exemption stated in A.C.A. § 6-13-631(g): (1) It was in compliance with the federal Voting Rights Act; and (2) It was operating under a 1971 federal desegregation order. On appeal, the Arkansas Supreme Court affirmed this holding, noting that the appellants had not refuted the evidence that was presented to establish these two bases for exemption.
It should be noted that the five appellants argued for the first time on appeal that it was absurd for the school district to claim that it was entitled to an exemption given the fact that it took the action of hiring an expert to study the population information after the census and that it further undertook a rezoning, as the statute requires, as a result of the expert's report. The court declined to entertain the argument since the appellants did not raise it in the lower court. We therefore do not know whether such an argument, if properly raised, would succeed. That is, we do not know whether the court would hold that a school district that rezones after the census waives its claim of an exemption.
We do know, nevertheless, that certain factual matters about the school district in question will impact the question of whether all board members are required to run for election in the upcoming school election. The following factors will be pertinent to the issue:
 • Whether the school district has a minority population in excess of ten percent
 • Whether the school district meets any of the conditions for exemption that are set forth in A.C.A. § 6-13-631(g); and
 • Whether the school district rezoned after the decennial census, and if so, why it did so.
A consideration of these factors will be crucial to a determination of whether all board members must run for election in the upcoming school election. Only a court can make a binding determination of this issue.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
[1] An exception applies to the two at-large members if they were chosen from among the members of the existing board (i.e., the board that existed prior to the rezoning) by the drawing of lots, pursuant to A.C.A. § 6-13-631(c).