Mr. Bob Bodenhamer, Chairman Baxter County Election Commission Baxter County Courthouse One East 7th Street, Suite 103 Mountain Home, Arkansas 72653
Dear Chairman Bodenhamer:
I am writing in response to your request for an opinion on the eligibility of school "resource officers" to hold the office of school board member in the school district in which they work. Specifically, you describe the school resource officers in question as being "actual employees of the Mountain Home City Police Department. . . ." You also note, however, that the "school system contributes $5,833 to each officer's salary" and that the schools "also pay for travel and workshops the officers attend." You state that "[t]hese funds come out of federal money that the school receives." Finally, you note that the "officers also work under the supervision of the Principal of the school they are assigned to." Your question is "whether "they are indeed eligible to serve on the Mountain Home School Board."
RESPONSE
As a preliminary matter, I should note that the Baxter County Board of Election Commissioners is not empowered to omit from the ballot the names of any candidates who have complied with the filing requirements for the office. When questions arise as to a candidate's eligibility prior to an election, the proper remedy is resort to the courts, by virtue of an action for a declaratory judgment and mandamus.
In my opinion, if such an action was instituted, the question of whether the school resource officers are eligible to serve as school board members will depend, under A.C.A. § 6-13-616(b), on whether they are "employed" by the school district. This is a question of fact, dependent not only on which entity issues the officers' paychecks, but more importantly, on which entity has the authority to direct and control the work of the officers. There appear to be some potentially conflicting statements of fact in this regard. I am not empowered as a factfinder in the issuance of Attorney General opinions, and as such, cannot definitively resolve the issue under A.C.A. § 6-13-616(b). A court of competent jurisdiction properly presented with the question would be invested with power to determine the applicable facts and issue a ruling.
In addition to the possible prohibition found at A.C.A. §6-13-616(b), the ethical guidelines and prohibitions found at A.C.A. §§ 6-24-101 to -120 (Supp. 2005) may stand as an obstacle to a school board member, once elected, continuing to work as a school resource officer. That subchapter is enforced by the local prosecuting attorneys and is administered by the Arkansas Department of Education. As I stated in Op. Att'y Gen. 2005-254
"I am not invested with any authority to determine compliance with [this] subchapter."
Finally, the common law "incompatibility" doctrine may prohibit the dual service. Although the question of whether the duties of these two positions are incompatible is to some extent one of fact, in my opinion a substantial question is raised under the incompatibility doctrine in this instance because school board members are in a position to make decisions regarding the contract under which the resource officers are employed.
Discussion of two preliminary points is necessary prior to discussion of the substantive law regarding eligibility.
First, I will note county boards of election commissioners "do not have the authority to declare a candidate ineligible and remove his name from the ballot when there is a dispute concerning the facts or the law." State v. Craighead County Bd.of Election Comm'rs, 300 Ark. 405, 409, 779 S.W.2d 169 (1989). The proper remedy in such case is a court action for mandamus coupled with a declaratory judgment. Id. See also, Hill v.Carter, 357 Ark. 597, 184 S.W.3d 431 (2004). As I stated in Op. Att'y Gen. 2005-204: "This conclusion follows . . . from the well-established principle that that the election commission generally performs a ministerial function in preparing and furnishing the ballots. See State v. Craighead County Board ofElection Commissioners, supra (stating that such commissions' actions are ministerial only). The court in Craighead County,supra, reasoned that:
 . . . the determination of eligibility may often require more than mere ministerial action. . . . To allow the board to consider disputed facts, make findings, and act thereon, is to put it in the same posture as a judicial tribunal. The board, being a ministerial entity, simply does not have that power. . . . The board may not exercise discretion or make findings of fact concerning the eligibility of a candidate. That determination may only be made by a court, and the court may then direct the board to either place the candidate's name on the ballot or remove it, as the case may be.
Id. at 410.
Second, the applicable statute in such judicial actions, A.C.A. § 7-5-207(b), requires a candidate for office, with certain exceptions not applicable here, to be "qualified and eligible at the time of filing as a candidate for the office to hold the public office for which he is a candidate. . . ." Thus, as a general matter, candidates for office must possess the required eligibility at the time of filing for the office. It has been stated that this "statute created a right in the people to the proper administration of election laws by prohibiting the inclusion of ineligible candidates on the ballot. . . ." Statev. Craighead County Board of Election Commissioners, supra at 411. See also, Clement v. Daniels (Ark.Sup.Ct. No. 06-519, May 17, 2006) ("Section 7-5-207(b) provides a means for a voter
to raise a pre-election attack on a candidate's eligibility to stand for election and for removal of that ineligible candidate's name from the ballot.") County boards of election commissioners have standing to institute such proceedings. See Jacobs v.Yates, 342 Ark. 243, 27 S.W.3d 734 (2000). Section 7-5-207(b) apparently applies in the context of school elections, but any such action must be brought in an expeditious manner. See Ballv. Phillips County Election Commission, (Ark.Sup.Ct. No. 05-105 January 12, 2006).
After election, the proper remedy for ineligibility of an office-holder is provided by A.C.A. § 16-118-105, or by an action in the nature of quo warranto, brought by the prosecuting attorney. Pederson v. Stracener, 354 Ark. 716, 128 S.W.3d 818
(2003). See also, State ex rel. Robinson v. Jones,194 Ark. 445, 108 S.W.2d 901 (1937) (prosecuting attorney had authority to institute quo warranto to oust school board member who acted as judge of his own election in violation of constitutional provision).
Turning now to the substantive law, a court faced with the eligibility of a school resource officer to be a candidate for, or hold the office of, school board member, would have to consider the applicability of A.C.A. § 6-13-616(b), which provides as follows:
 6-13-616. Qualifications of directors.
 * * *
 (b) No person who is elected to a school district board of directors shall be eligible for employment in that same school district.
The pertinent inquiry under this statute therefore focuses on whether the school resource officers in question are engaged in "employment" in the school district.
I recently outlined the nature of the employment of school resource officers in Op. Att'y Gen. No. 2006-010:
 In the attached Ark. Op. Att'y Gen. No. 2003-001, one of my predecessors discussed in some detail the actual practice of various districts in providing security on school district campuses, concluding that certain districts avail themselves of local police resources through what appears to be an independent-contractor arrangement, possibly buffering this service with security forces that comprise true employees. Specifically, my predecessor reported:
 Based upon my inquiries, police officers apparently serve with some regularity as school resource officers, although districts vary in their policies regarding remuneration. In the Little Rock School District, police officers are reportedly assigned as school resource officers pursuant to a purchased-services contract providing that the district will pay one half of the officers' salaries. In the North Little Rock School District, police officers are reportedly assigned as school resource officers pursuant to an agreement providing that the city will continue to pay the officers' salaries. The district pays for some training and travel required to perform these services. In the Pulaski County School District, police officers reportedly serve as school resource officers within cities and deputy sheriffs serve in that capacity in the county without any payment by the district, although the district does provide some office space. See also Garcia v. State, 333 Ark. 26, 29, 969 S.W.2d 591 (1998) (without addressing the issue of remuneration, noting that a witness in a criminal trial was both a school resource officer and a Russellville police officer). Each of these districts also reportedly maintains its own security staff, which serve as the principal agents to enforce school disciplinary policy. As I understand it, the school resource officers primarily serve to deter criminal activity, to effect any necessary arrests and to expedite good relations among the police, the students and the community. In sum, the school and its environs in all respects are seen as comprising the officer's "beat."
Id. at 7.
You have noted that in the Mountain Home School District, the resource officers "are actual employees of the Mountain Home City Police Department," but that the "school system contributes $5,833 to each officer's salary." You also state that the school system pays for travel and workshops the officers attend. The question of whether the resource officers in question are "actual employees" of the Police Department is one of fact that can only be decided on a case-by-case basis. See Op. Att'y Gen. 98-095
("Under Arkansas law, the question of employment is a question of fact"). As one of my predecessors noted in Op. Att'y Gen.2001-202 ". . . payment of salary alone does not equate to a finding of "employment" by the entity paying the salary." In that opinion it was concluded that even if a city or county or some combination thereof paid the municipal court clerk's salary, that fact did not conclusively establish the clerk as an "employee" of that entity. My predecessor placed emphasis on the fact that the municipal judge appointed the clerk and relied upon Carter v.Cash, 312 Ark. 41, 847 S.W.2d 18 (1993) for the proposition that the "most important factor in determining an employment relationship is the right to control the activities of the employee, not necessarily the payment of salary." A similar statement was made in Op. Att'y. Gen. 99-346, regarding the employment status of volunteer firefighters:
 Ordinarily, in determining whether an "employment" relationship exists, the Arkansas Supreme Court has emphasized the importance of an employer's control over the individual. See, e.g., Cash v. Carter, 312 Ark. 41, 847 S.W.2d 18 (1993). See also BLACK'S LAW DICTIONARY 471 (5th ed. 1979) (defining "employee" as "[a] person in the service of another . . . where the employer has the power or right to control and direct the employee in the material details of how the work is to be performed.") Applying this definition clearly requires reference to the surrounding facts.
Id. at 3. See also Ops. Att'y Gen. 98-095; 98-288; 97-359; and 93-324.
With regard to the degree of control exercised by the school system, you have noted that the "officers work under the supervision of the Principal of the school they are assigned to." This indicates some element of control by the school system over the actions of the officers. On the other hand, statements have been made that "these gentlemen report to their chief and that he could change their patrol at anytime." Armando Rios, "MHSB legalissue drawing opinions; Board president says he doesn't seeanything wrong with SRO running for vacant position" The Baxter Bulletin, (August 14th, 2006), quoting the President of the Mountain Home School Board, in turn quoting an Arkansas School Boards Association Attorney.[1] Obviously, therefore, an issue of fact is presented as to whether the resource officers in question are engaged in "employment" with the school district as that term is usually interpreted by the judicial branch. In my opinion, therefore, the question of whether A.C.A. §6-13-616(b)'s "employment" restriction prohibits the officers from serving as school board members is one of fact. I am not empowered as a factfinder in the issuance of Attorney General opinions, and as such, cannot definitively resolve this issue. A court of competent jurisdiction properly presented with the question would be invested with power to determine the applicable facts and issue a ruling.
Two other potential obstacles to the resource officers' service as school board members should also be noted.
First, Sections 6-24-101 to -120 (Supp. 2005) of the Arkansas Code enumerate ethical guidelines for school district board members, administrators, and employees. Among other things, this subchapter declares that it is a "breach of the ethical standards of this chapter for a board member to contract with the public educational entity the member serves if the board member has knowledge that he or she is directly or indirectly interested in the contract." A.C.A. § 6-24-105(a). Contracts totaling five thousand dollars or more per fiscal year require the approval of the Arkansas Commissioner of Education. A.C.A. §6-24-105(c)(2)(A). The subchapter defines the applicable terms and requires the State Board of Education to adopt rules and regulations to implement the subchapter. The Arkansas Department of Education has promulgated rules in compliance with this mandate. See Arkansas Department of Education Rules andRegulations Governing Ethical Guidelines and Prohibitions forEducational Administrators, Employees, Board Members and otherParties ("ADE Reg.") §§ 1.00 through 19.03.
I am not in a position to determine the applicability or effect of these provisions on the arrangement you describe. As I stated in Op. Att'y Gen. 2005-254, "I am not invested with any authority to determine compliance with [this] subchapter. That power has been granted to the appropriate prosecuting attorney. A.C.A. §6-24-116." I noted therein that Section 6-24-116 (Supp. 2005) provides that "[a]t the request of a board of a public educational entity, the executive administrator at a public educational entity, the Commissioner of Education, or the Legislative Joint Auditing Committee, the appropriate prosecuting attorney shall review contracts or transactions for compliance with the provisions of this chapter." (Emphasis added). I also noted that A.C.A. § 6-24-114(a)(1) (Supp. 2005) states that the Department of Education "may review alleged violations of this chapter." I also stated that "I am not given any enforcement authority under the subchapter, except to pursue a mandamus proceeding, if necessary, to compel the prosecuting attorney to perform his or her duties thereunder." For questions regarding the legality, under A.C.A. §§ 6-24-101 to -120, of a particular school resource officer's service as a school board member, I suggest contact be made with the local prosecuting attorney or the Arkansas Department of Education.
Second, the common law "incompatibility" of offices doctrine should be considered. The Arkansas Supreme Court most recently discussed this doctrine in Thompson v. Roberts, 333 Ark. 544,970 S.W.2d 239 (1998). The court cited previous case law in outlining the contours of the doctrine:
 In Tappan v. Helena Federal Savings Loan Ass'n, 193 Ark. 1023, 104 S.W.2d 458 (1937), we explained the rule that "[t]he inconsistency, which at common law makes offices incompatible . . . lies rather in the conflict of interest, as where one is subordinate to the other, and subject in some degree to the supervisory power of its incumbent, or where the incumbent of one office has the power to remove the incumbent of the other or to audit the accounts of the other." Byrd v. State, 240 Ark. 743, 402 S.W.2d 121 (1966), expounded on Tappan, stating that "incompatibility exists where there is a conflict of interests, which includes, inter alia, where one office is subordinate to the other."
 * * *
 At common law, and generally under statutory enactment, it is now established beyond question that a contract made by an officer of a municipality with himself, or in which he is interested, is contrary to public policy, and tainted with illegality; and this rule applies whether such officer acts alone on behalf of the municipality, or as a member of a board or council. Neither the fact that a majority of the votes of a council, or board, in favor of the contract are cast by disinterested officers, nor the fact that the officer interested did not participate in the proceedings, necessarily relieves the contract from its vice. The facts [sic] that the interest of the offending officer in the invalid contract is indirect, and is very small, is immaterial. The statutory prohibition is frequently so wide in its terms as to prohibit any officer from contracting with the municipality, whether he takes part in the making of the contract or not.
Id. at 549 and 548, relying in part on Rogers v. Sangster,180 Ark. 907, 23 S.W.2d 613 (1930), and Davis v. Doyle,230 Ark. 421, 323 S.W.2d 202 (1959).
In Thompson, at issue was a mayor's simultaneous service as a part-time bookkeeper for the city she served. The court found such service incompatible, stating:
 While the trial court found that appellants had proved no wrongdoing except "performing two jobs," it is that very inconsistency which is the basis of the incompatibility doctrine. One commentator has explained, "Incompatibility arises, therefore, from the nature of the duties of the offices, when there is an inconsistency in the functions of the two, where the functions of the two are inherently inconsistent or repugnant, as where the antagonism would result in the attempt by one person to discharge the duties of both offices, or where the nature and duties of the two offices are such as to render it improper from considerations of public policy for one person to retain both." Eugene McQuillin, 3 The Law of Municipal Corporations § 12.67 (3d ed. 1990). In the present case, common sense dictates that the bookkeeper for the city would to some degree be subject to the supervisory power of the mayor.
Id. at 549.
The "incompatibility" doctrine has been applied in the case of school district board members. See e.g., Byrd, supra, and Ops. Att'y Gen. 2004-291; 99-249; 96-035; 92-003; 89-201 and 88-178.See also, Allan E. Korpela, LL.B. "Right of Schoolteacher toServe as Member of School Board in School District WhereEmployed, 70 A.L.R.3d 1188 (1976).[2]
The pertinent question under the incompatibility doctrine is therefore whether the duties of a school board member are incompatible with the duties of a city police officer assigned as a school resource officer. Again, this will be a question of fact. The applicable inquiry is whether one of these positions "is subordinate to the other, and subject in some degree to the supervisory power of its incumbent," or whether "the incumbent of one office has the power to remove the incumbent of the other or to audit the accounts of the other." It seems apparent at a minimum, that the school district board of directors has authority to make decisions regarding the contract by which the resource officer is employed. In my opinion, a substantial question is therefore raised as to whether the concurrent holding of both positions would be unlawful under the "incompatibility" doctrine. Again, however, a definitive resolution of the issue will require findings of fact.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:ECW/cyh
[1] This same article also states that one of the officers in question has withdrawn his candidacy.
[2] In my opinion, neither A.C.A. § 6-13-616(b), discussed above, nor Arkansas Constitution, art. 19, § 26 prevent application of the common law doctrine. In my opinion the common law doctrine is properly applied even if the conduct falls outside the applicable statute. See generally, Price v.Edmonds, 232 Ark. 381, 337 S.W.2d 658 (1960). In addition, article 19, § 26, which states that "militia officers, and officers of the public schools, and Notaries may be elected to fill any executive or judicial office," appears to apply on toelected executive or judicial offices, and would therefore not prohibit statutory or common law proscriptions against employment or contracting with the school district.